Argued August 21, affirmed September 8, petition for
rehearing denied October 17, petition for
review allowed November 14, 1972
(See later volume of Oregon Reports)

## STATE OF OREGON, *Respondent, v.*
## FRANCIS JOSEPH WELCH (No. 21527),
### *Appellant.*

500 P2d 1071

F. E. *Glenn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Defendant appeals from conviction and sentence on each of two counts of "uttering and publishing" false checks, one for $3,100 and the other for $3,007. Former ORS 165.115.

The checks, signed "Gary Price Jr." were drawn on the account of Ramble In Enterprises in the Security Pacific National Bank, Vista, California, and were payable to Jowelco International, a firm name for which defendant had a business account in the First National Bank of Oregon, La Grande, Oregon. They were deposited in such account by defendant on July 12, 1971. After depositing the checks in such account, defendant immediately drew checks thereon which depleted the account before the First National Bank was notified by the Security Bank in California that the Ramble In account had been closed for about two years, and the checks would not be paid.

Defendant contends that his motion for acquittal

should have been allowed because there was insufficient evidence of his knowledge that the checks were false, and for lack of evidence that defendant intended to defraud. He also claims error with reference to two instructions, and that sentences should not have been assessed for two crimes.

(1) The assistant manager of the California bank testified that defendant was the only person ever authorized to draw checks on the Ramble In account; that the account was closed and defendant was notified thereof by letter on April 2, 1969 and that thereafter defendant came to the bank asking that the account be left open and was personally told by the assistant manager that it would not be left open, and that since then it had not been reopened.

■ This testimony alone is sufficient from which the jury could infer that defendant knew of the falsity of the checks and intended to defraud. Defendant testified that Gary Price Jr. (the maker's name on the checks) was a former partner of his in Ramble In, and had taken it over, and that he had received the checks in question from Price for merchandise. He did not produce Price as a witness and did not testify to any place he could be found. The jury was not bound to believe this testimony, as opposed to that of the assistant bank manager from which opposing inferences could be drawn.

■ (2), (3) The first of the instructions assigned as erroneous was a part of the instruction defining forgery in which the court said "* * * a bank check with a fictitious name as maker is deemed to be a forgery or a false check." Defendant claims this was a prohibited comment on the evidence, but cites no authority in support of his contention. It was incum-

bent upon the court to define forgery for the indictment is based upon former ORS 165.115 which provides:

> "Any person who * * * utters, publishes, passes or tenders * * * as true and genuine, any false, altered, forged or counterfeited * * * writing, instrument * * * shall be punished * * *."

The court's instructions, including the part challenged, correctly defined forgery. The part challenged did not single out the particular testimony of the defendant concerning the Gary Price Jr. signatures on the checks, but was general in nature. In view of all of the evidence, the forgery instruction would have been incomplete without the challenged part. For these reasons, the instruction was not erroneous.

■ The other instruction assigned as erroneous was not excepted to. We will not consider it. *State v. Avent*, 209 Or 181, 302 P2d 549 (1956).

■ (4) The other asserted error is that because defendant presented the checks at the same time, he could be sentenced for but one crime.

Each check was a separate entity, each of which violated the forgery statute if the requirements of that statute were proven.

In *State v. Woolard*, 259 Or 232, 484 P2d 314 (1971), the court held that a course of conduct which violates two separate statutes may, in certain circumstances, be the subject of only one sentence but "* * * [t]his situation should be distinguished from a course of conduct which violates the same statute several times * * *."

The court sentenced defendant to four years' im-

prisonment on each count, the sentences to run concurrently. We find no error therein.

Affirmed.

SCHWAB, C.J., dissenting.

Contrary to the opinion of the majority I believe that the defendant here was guilty of one, not two, criminal acts and should not have received two separate sentences for violation of former ORS 165.115.

As the majority points out, the defendant, in a single transaction gave the First National Bank two false checks in exchange for $6,107. Writing the separate checks was not criminal. The defendant's conduct became criminal only when, in a single transaction, he tendered the checks to the bank as genuine in exchange for the money. While the holdings are not directly determinative of the issue, I think that application of the philosophy which underlies *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971), and *State v. Royce Lovell Brown,* 262 Or 442, 497 P2d 1191 (1972), requires a conclusion that here only one criminal act occurred.

It can be argued that the statute, former ORS 165.115, by use of the singular indicated a legislative intent that the passing of each false instrument constituted a separate crime. However, *State v. Woolard,* supra, tells us that the statutes of this ilk are not to be read literally when to do so would produce a harsh and probably unintended result.

Admittedly, it may at times be difficult to determine when a transaction constitutes more than one punishable crime; but I believe no unusual difficulty is presented here.

If a defendant obtained 20 counterfeit one dollar bills and exchanged them at a bank for 20 silver dollars, I doubt that we would hold that he was guilty of 20 separate violations of the "passing a false instrument" statute. Certainly if a defendant sold two marihuana cigarettes at the same time and place and to the same individual we would not hold the defendant guilty of two separate crimes.

The basic principles enunciated in *Woolard* and *Brown* are not new to Oregon jurisprudence. For example, the concept of a single transaction constituting but one crime, even though more than one article or person be involved, has been with us for many years. In *State of Oregon v. McCormack,* 8 Or 236 (1880), the court held that a defendant charged with larceny of a horse, saddle and bridle taken at the same time and place and from the same person was involved in a single criminal transaction constituting but one crime. In *State v. Clark,* 46 Or 140, 80 P 101 (1905), the court held that the stealing of articles belonging to two or more persons at the same time and place constituted but one criminal offense.

For the foregoing reasons I respectfully dissent.