Argued November 20, affirmed December 24, 1973, reconsideration
denied January 23, petition for review allowed April 9, 1974

STATE OF OREGON, *Respondent, v.* GERALD
THEODORE MACOMBER (No. 78281), *Appellant.*
517 P2d 344

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

This is a criminal case in which the defendant, Gerald Theodore Macomber, was convicted by a jury of unauthorized use of a vehicle. ORS 164.135. He appeals, assigning a number of errors.

On September 28, 1972, four Oregon State Police officers appeared at the defendant's truck repair shop. The defendant permitted them to look around. During this search, serial numbers of various truck parts

were written down by the officers. Based upon the information they obtained and that given to them by an unidentified informant, a search warrant was acquired and executed the following day, September 29, 1972.

Among the items seized during the search were most of the parts to a truck stolen from a Walterville, Oregon resident. Defendant was thereafter indicted for the unauthorized use of that truck.

We first examine defendant's assertion that he was charged under the wrong statute. He contends ORS 164.135 is solely a joyriding-type offense, not intended "to prohibit the possession of a few truck parts."

ORS 164.135 provides, in pertinent part:

"(1) A person commits the crime of unauthorized use of a vehicle when:

"(a) He takes, operates, *exercises control over,* rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner * * *.

"* * * * *." (Emphasis supplied.)

As stated in the commentary to the Proposed Oregon Criminal Code Final Draft and Report 142, Art 14, § 134 (1970), ORS 164.135 (1) was largely derived from New York Revised Penal Law (NYRPL), § 165.05 (1).

■ Presumably the legislature was cognizant of the existing case law construing the New York provision when it enacted ORS 164.135.

In *People v. McCaleb,* 25 NY2d 394, 306 NYS2d 889, 255 NE2d 136 (1969), the New York Court of Appeals upheld two convictions under NYRPL 165.05

where the evidence was merely that the defendants were found in recently moved, yet presently parked, cars.

The court stated:

"Defendants argue that the quoted section should be narrowly construed; that its specification of prohibited conduct refers only to vehicles in motion and that, similarly, the phrase 'otherwise uses' should be confined to conduct involving moving vehicles. It is emphasized, in support of this view, that the section is derived from section 1293-a of the old Penal Law, which was intended to punish only 'joy riding,' and that, also, the present section is found in article 165 of the new Penal Law, devoted to and headed 'Other Offenses Relating to Theft.' * * *" 25 NY2d at 397.

The court rejected this construction, stating:

"The addition of the phrase 'or otherwise uses' without consent of the owner was not just an attempt to overrule legislatively the *Diane S.* case (supra), [Matter of Diane S., 18 NY2d 973, 278 NYS2d 211, 224 NE2d 719 (1966)], for, as already noted, one who rides without the owner's permission in a vehicle is explicitly covered by the statute. That the other use is not confined to operating or riding in the vehicle is indicated by the addition in the present statute of the phrase 'exercis[ing] control over' the vehicle. The exercise of control is not limited to a moving vehicle, for otherwise it would be largely synonymous with 'operates,' or covered by 'riding'. Thus barring the owner or others from entry into the car might constitute such control, as might the temporary use of the vehicle, or its motor, for a purpose accomplished while the vehicle remains or has become stationary. * * *" 25 NY2d at 399.

Additionally, we note that the arresting officers testified that defendant admitted the Walterville truck, which he was rebuilding, was in running order when he

58

first acquired it. This is clearly sufficient evidence to support a finding that a vehicle rather than a few "truck parts" was involved here. ORS 481.070 (2), ORS 482.030 (4).

■ Accordingly, we hold that alterations defendant made to the Walterville truck was an exercise of control over the truck within the meaning of ORS 164.135.

The defendant next asserts that the affidavit①

---

① The affidavit reads:

"I, Harris Kirby, being first duly sworn, on oath depose and say:

"THAT I am a Corporal with the Oregon State Police and have been so for the last nineteen (19) years; that I received information in the past 40 hours from a confidential reliable citizen that a Cummings engine bearing Serial Number 713368 from a wrecked 1971 Mack Truck was presently undergoing repair at a Portland automotive shop; that on the 28th day of September, 1972, I observed a Cummings engine bearing the same Serial Number 713368 at a shop located at 4719 Niles Avenue NE, Salem, Marion County, Oregon; that I was informed by the confidential reliable citizen that the vehicle frame from the original Mack truck bearing Serial Number RS763LT5827 could be found at the said shop located at 4719 Niles Avenue NE, Salem; that on the 28th day of September, 1972, I observed a damaged frame bearing the same Serial Number RS763LT5827 at the aforesaid address and observed therein a new frame which was in the process of being constructed which bore the same Serial Number RS763LT5827; that Gerry Theodore Macombre, [sic] who operates the above-mentioned shop at 4719 Niles Avenue NE, Salem, has admitted to me that he has not made application to the Department of Motor Vehicles for a permit allowing him to dismantle any wrecked vehicle in accordance with provisions of Oregon law; that I have probable cause to believe that the engine now located at this address is stolen and contains a hidden Serial Number; That the confidential reliable citizen has informed me that the engine located at the aforesaid shop at 4719 Niles Avenue NE, Salem, is stolen and contains a hidden Serial Number thereon; that I have probable cause to believe that said engine bearing Serial Number 713368 is stolen; that I make this Affidavit in support of my request for a search warrant to search the above described premises at 4719 Niles Avenue NE, Salem, Marion County, Oregon, for the stolen engine bearing Serial Number 713368 and other evidence of the commission of this crime."

used to acquire the search warrant was insufficient to establish probable cause because there were no facts regarding the credibility of the informant and the reliability of his information, citing *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964).

Examining the affidavit under the "four corners" rule of *State v. Metler,* 6 Or App 356, 360-61, 487 P2d 1377 (1971), we note it includes facts asserting (1) the unnamed, reliable informant told the affiant that the engine was stolen; (2) the information received from the informant specified the serial numbers of both the engine and the truck frame allegedly stolen; (3) the affiant personally observed the specified engine and truck frame containing the identical numbers in the defendant's possession at the place to be searched; and (4) the affiant personally observed a second truck frame being constructed on those premises bearing the same serial number as the stolen frame.

Where, as here, the affidavit contains not only a report from an anonymous, allegedly reliable informant but also a report of an independent investigation made by the affiant, which directly corroborates in essential particulars information furnished by the informant, the affidavit itself contains evidence of the reliability of an informant.

The court in *Spinelli v. United States,* 393 US 410, 415, 89 S Ct 584, 21 L Ed 2d 637 (1968) stated the proper test is as follows:

> "The informer's report must first be measured against *Aguilar's* standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar,* the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well,

however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration? * * *"

As applied to this case, *Aguilar* requires that the affidavit contain "* * * some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable' * * *." 378 US at 114. We think the affidavit was sufficient.

Defendant next asserts the trial court erred in denying his motion for mistrial which was based upon an allegedly improper comment made by the prosecutor during the case-in-chief.

In order to understand this assignment, the following summary of the testimony is necessary:

Officer Kirby was called by the state and testified that when he initially went to defendant's premises on September 28, 1972, he noticed two truck frames bearing the same serial numbers—a damaged truck frame and a newly constructed frame.

On direct examination, Officer Kirby testified that he returned on the following day and:

"A * * * asked Mr. Macomber then for the frame that I had observed on the outside the day before, which was observed by myself to be missing. He said that he had disposed of it by taking it next door to a wrecking yard.

"I took one of my officers with me to that wrecking yard to inspect that frame, and which he could not find. He did find pieces but he could not find the piece that had the number on it.

"Q Did you ever locate that frame that you had seen the first day on the outside of the defendant's shop?
"A No."

On cross-examination, defendant's counsel asked Officer Kirby:

"Q All right. Now, do you recall talking to the defendant about the junky condition and fire hazard around the premises?
"A Fire hazard?
"Q Yeah.
"A No.

"Q Do you recall talking with the defendant about the fact that he had been ordered by a fire insurance company to remove all of the debris on the outside of that shop?
"A No. I would have nothing to do with this whatsoever.

"Q Well, no. Do you recall him telling you this or talking to you about it when you were there the first time?
"A No, sir.

"Q When you came the first time?
"A No, sir; I don't.

"Q Did he not tell you that he had been given only until the 29th of September—

"MR. SUSEE [prosecutor]: Your Honor, it appears to me what counsel is doing is testifying to what his client would testify or say if he was called to the stand. I think this is a matter that—"

At this point the defense counsel objected, out of the presence of the jury, that this improperly raised the issue of whether defendant would testify.

The court offered to give a cautionary instruction, but the defendant refused and moved for a mistrial, which the court denied, saying: "* * * [S]ome-

times, these are more dangerous than what has already been said."

In doing so, the court pointed out:

"* * * I'll accept Mr. Susee's representation that he was unaware of the defendant's plans regarding testimony of the defendant. If it had not been for the addition of this reference, I think I would have sustained the objection to the testimony on the grounds that it was repetitious, leading, intended to be testimony by counsel rather than by the witness. He had already denied the statement which was being asked the second or third time. * * *"

■■ The granting or denial of a motion for a mistrial is generally a matter within the discretion of the trial judge. *State v. Cate*, 7 Or App 509, 491 P2d 627 (1971), Sup Ct *review denied* (1972). Such was the case here. We conclude the trial court did not abuse its discretion in denying the motion.

The remaining assignments of error are without merit.

Affirmed.