Argued June 24, affirmed July 22, reconsideration denied
August 22, petition for review denied October 15, 1974

STATE OF OREGON, *Respondent, v.* GERALD
THEODORE MACOMBER (No. 73 2632), *Appellant.*

524 P2d 574

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellant.

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Defendant appeals from conviction of two counts in one indictment: (1) attempted murder (ORS 163.-115) and (2) arson in the first degree (ORS 164.325) by causing an explosion to intentionally damage the protected property, a dwelling, of another.

The facts upon which this prosecution was based grew out of another prosecution of defendant for un-

authorized use of a vehicle, the appeals of which are reported in *State v. Macomber,* 16 Or App 54, 517 P2d 344 (1973), *reversed* 99 Adv Sh 342, 269 Or 58, 523 P2d 560 (1974). Those quite-involved facts are unnecessary to relate in his opinion, except to say that the prosecution at bar involved the state's accusation that the defendant bombed with dynamite the dwelling house of one Edward Jay Myer with intent to kill the latter in order to prevent him from testifying against Macomber in the trial of the unauthorized-use-of-motor-vehicle charge. The explosion seriously injured Myer's child who was in the dwelling, and caused extensive property damage.

The assignments of error are that the trial court erred (1) in denying a defense motion to require the state to elect to proceed on one or the other count of the indictment and in imposing sentence judgments on each, and (2) in disallowing motions for mistrial or a new trial because of alleged prejudicial remarks to the jury by the prosecutor.

(1). Defendant argues that, inasmuch as the dynamiting of the dwelling was one act or transaction from which each crime charged in Counts I (attempted murder) and II (damage to protected property) necessarily flowed, the state should have been required to elect upon which count it would proceed, and additionally, that the court should not have imposed two 20-year sentences to run concurrently. The rationale of this argument is based upon ORS 132.560[①] and recent

---

[①] ORS 132.560 provides:

"The indictment must charge but one crime, and in one form only, except that:

"(1) Where the crime may be committed by the use of different means, the indictment may allege the means in the alternative.

Oregon appellate case law exemplified by *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971); *State v. Brown,* 262 Or 442, 497 P2d 1191 (1972); *State v. Clipston,* 3 Or App 313, 473 P2d 682 (1970); *State v. Welch,* 11 Or App 140, 500 P2d 1071 (1972), *reversed* 264 Or 388, 505 P2d 910 (1973); *State v. Sanchez,* 14 Or App 234, 511 P2d 1231, Sup Ct *review denied* (1973); and *State v. Fitzgerald,* 12 Or App 495, 506 P2d 733, *affirmed* 267 Or 266, 516 P2d 1280 (1973).

■ When defense counsel moved to require the state to elect, he relied upon *State v. Brown,* supra. He said defendant was entitled to go to trial on one or the other count since both were based on one act "and that the ruling on that act will be the only crime for which he can be prosecuted or convicted for the one act charged." He said the jury would have to find intent to damage property and intent to kill to find defendant guilty of both counts, and there could only be "one intent per act, * * *" which means the counts could only be in the alternative, citing ORS 132.560 (1).[1] The trial court correctly pointed out a defendant could harbor both intentions, and overruled the motion, relying upon ORS 132.560 (2).[2]

With reference to case law defendant relies most strongly in his brief upon *State v. Brown,* supra, and *State v. Woolard,* supra. In *Brown* the court distinguished a situation like that at bar:

"Second, we wish to point out that our decision in this case is limited to instances of successive

"(2) When there are several charges against any person or persons for the same act or transaction, instead of having several indictments, the whole may be joined in one indictment in several counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

prosecution, and has no application to the question of multiple punishment. As we have said, the two problems involve entirely different considerations, and this opinion is not intended to limit in any way the power of the legislature to provide for separate and cumulative punishments for different aspects of a single act or course of conduct * * *." 262 Or at 459.

In *Woolard* the court held that it is a question of legislative intent whether a defendant can be convicted and sentenced for more than one crime growing out of the same act or transaction. In that case it held that the legislature, in a burglary-larceny situation, intended only one, and limited the decision to that unique situation.

██ We have examined the Criminal Law Revision Commission's Commentary with reference to the arson and murder provisions thereof, and find nothing—nor do we find anything elsewhere—to indicate with any clarity that the legislature intended punishment for only one crime in a situation like that at bar. Therefore, we conclude that in this situation the rule restated in *State v. McDonald,* 231 Or 48, 52, 365 P2d 494 (1961), *cert denied* 370 US 903 (1962), is still applicable law in Oregon:

"In *State v. Weitzel,* 157 Or 334, 340, 69 P2d 958, and *State v. Stewart,* 11 Or 52, 53, 4 P 128, we quoted with approval the following from *Morey v. Commonwealth,* 108 Mass 434:

" ' "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal, or conviction, under either statute, does not exempt the defendant from prosecution and punishment under the other." ' "[2]

[2] Separate trials would now be prohibited by the holding in State v. Brown, 262 Or 442, 497 P2d 1191 (1972).

*See also State v. Huennekens,* 245 Or 150, 152, 420 P2d 384 (1966), and *State v. Welch,* supra.

(2). The defendant contends a motion for mistrial based on the prosecutor's misconduct should have been allowed, or in the alternative a motion for a new trial, on the same basis.

The prosecutor made a lengthy summation of the complicated evidence in his closing argument to the jury which takes up 43 pages of transcript. At the 40th page he commenced asking rhetorical questions, commencing with the preface:

> "It's a common defense technique to put on trial the defense attorney's office; police officers; other witnesses; everybody involved in the case except the defendant, in order to distract your attention from the real issues in this case."

In the next two pages the transcript shows the prosecutor at random points said, "ask the defendant to explain * * *," "[a]sk the defendant how he explains * * *," "[a]sk him how the telephone records * * *," "[a]sk him to explain those things * * *."

The argument was then closed, and defense counsel, in camera, immediately moved for mistrial. We think the motion was timely made under these circumstances.

The prosecutor conceded he should have used the word "defense" rather than "defendant" and "him."

The court said it did not believe the choice of language by the prosecutor was inadvertent, and that it was "an extremely close question" whether the prosecutor had made prejudicial comments on the defendant's having exercised his constitutional right not to testify.

■■ Every prosecutor, if not every lawyer, should know that in *Griffin v. California,* 380 US 609, 615, 85 S Ct 1229, 14 L Ed 2d 106 (1965), the United States Supreme Court said:

> "* * * [T]he Fifth Amendment * * * in its bearing on the States by reason of the Fourteenth Amendment, forbids * * * comment by the prosecution on the accused's silence * * *."

This rule applied in Oregon prosecutions prior to the decision in *Griffin. State v. Wederski,* 230 Or 57, 368 P2d 393 (1962). When a prosecutor chooses to circumvent this rule by cleverly worded arguments, he does no service to the system of justice. We agree with the trial court that the remarks did not appear to be inadvertent, but we doubt that they were sufficiently prejudicial, particularly in view of a curative instruction which the court gave the jury, for us to say the trial court went beyond the limits of its discretion in denying the motions. The prosecutor's remarks were not specifically pointed at and critical of the failure of defendant to testify as they were in *Griffin* and may be classed as "insignificant" as similar remarks have been in other jurisdictions. *See* Annotation, 24 ALR3d, infra. Further, the curative instruction was given with defense counsel's concurrence. Each such transgression must be judged against its own backdrop of facts. This is pointed out in the exhaustive annotation on the subject in 24 ALR3d 1093 (1969).

In *Wederski,* after relating the prosecutor's indirect reference to the defendant's failure to testify which was followed by a motion for mistrial, the court said:

> "* * * The trial judge denied the motion, saying he would cure the errors in his instructions. Had he done so, the presumably harmful effect of

the district attorney's remarks might have been removed and the denial of the motion for a mistrial might well have been within the permissible limits of discretion. The instructions, however, failed to caution the jury that they could not consider the presence in the courtroom of silent witnesses in aid of the state's case. Neither did the court instruct the jury that the defendant had no duty to prove or disprove anything; that his plea of not guilty denied everything; and that the jury could draw no inferences from the defendant's failure to contradict any evidence in the case. As the court failed to admonish the jury to disregard the improper argument of the district attorney, the case went to the jury with the prejudicial statements approved, so far as the jury knew, by the court's silence." 230 Or at 60-1.

The instructions in the case at bar fulfilled all of the deficiencies of the instructions mentioned by the court in *Wederski*. We think that such harm as there was in the remarks was removed. *See also State v. Conway,* 2 Or App 49, 51, 465 P2d 722 (1970).

Affirmed.