Argued and submitted January 30, 1981, affirmed March 8, 1982

# STATE OF OREGON,
*Respondent,*

*v.*

# ROBERT DALE LOWRY,
*Appellant.*

## (No. 78-2-298, CA 16150)

641 P2d 1144

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Karen H. Green, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals his conviction for robbery in the first degree, ORS 164.415, assigning as errors (1) denial of his request for a preliminary hearing after indictment; (2) denial of his motions to dismiss or for mistrial based upon "forensic misconduct" by the prosecutor; (3) denial of his right to a speedy trial; and (4) instructing the jury on second-degree robbery. We affirm.

■ Defendant's first contention was disposed of in *State v. Clark,* 291 Or 231, 630 P2d 810, *cert den* 454 US 1084 (1981), and *State v. Edmonson,* 291 Or 251, 630 P2d 822 (1981). In those cases, the court held that the choice to initiate prosecution by indictment without a preliminary hearing or by information with a preliminary hearing is not in itself unconstitutional, absent a showing that the administration of the two procedures is "purely [haphazard] or otherwise on terms that have no satisfactory explanation under art I, § 20." *State v. Edmonson, supra,* 291 Or at 254. Defendant has made no such showing here; his argument is premised on the "mere coexistence of the two procedures."

■ ■ Defendant next argues that the trial court should have either granted his motions for dismissal or granted a mistrial[1] because of "forensic misconduct" on the part of the prosecutor. Four specific instances of prosecutorial misconduct are claimed. First, the state introduced evidence that defendant had used an alias when he purchased an automobile prior to the commission of the robbery. Defendant contends that evidence of his use of an alias is a prior "bad act" and is admissible only if relevant for some purpose other than to show the defendant's bad character. *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975); *State v. Eaton,* 31 Or App 653, 656, 571 P2d 173 (1977).

The testimony established that an automobile similar to the one purchased earlier by defendant was seen in the area of the robbery. In tracing ownership of that

---

[1] In all but one instance defendant's motion was for dismissal with prejudice. If that were the only motion, we would not consider defendant's assignment of error. However, defendant ultimately did move for mistrial based on the claimed continuing prosecutorial misconduct. In deciding whether it was error to deny that motion, all of the claimed misconduct must be considered.

automobile to defendant, the state elicited testimony regarding the name of the record owner of that automobile. The state argues that, although the testimony that defendant used an alias was prejudicial to defendant, it was relevant for the purpose of connecting ownership of the automobile seen in the area of the robbery to defendant and was not offered to establish his "bad" character. The probative value of the alias testimony outweighed any prejudicial effect on defendant, and its admission in evidence was not error.

■ Second, the prosecutor displayed two exhibits in front of the jury in violation of a prior court ruling requiring that all but one of the state's exhibits be kept from the jury's view until offered into evidence. The record reveals that as soon as the two exhibits were handed to the witness, defense counsel objected and the jury was removed. Thereafter, the court admonished the prosecutor for violating its earlier ruling and, after hearing arguments on the admissibility of the two exhibits, suppressed them for breach of the discovery statutes. Although the prosecutor acted improperly in disregarding the earlier court ruling, defendant has shown no prejudice caused by this act. The exhibits were only momentarily before the jury, the jury was removed before a response to the prosecutor's question was given, and no explanation or further reference to the exhibits was allowed. There was no error. *See State v. Jones,* 279 Or 55, 62, 566 P2d 867 (1977).

■ The third claim of prosecutorial misconduct is based on the state's calling a witness to the stand, knowing that the witness would refuse to testify. Defendant relies on *State v. Johnson,* 243 Or 532, 413 P2d 383 (1966), where it was held to be reversible error for the state, knowing that the witness, then under indictment, would invoke the Fifth Amendment, to call that witness for the purpose of forcing him to invoke his privilege against self-incrimination in front of the jury. That rule, however, does not apply where, as here, the witness did not have a valid basis for asserting his rights under the Fifth Amendment. The witness was defendant's alleged accomplice and had previously been convicted of the robbery for which defendant was standing trial; he admitted his involvement in the crime at defendant's trial, but refused to answer certain questions for fear

of what would happen to him when he returned to the penitentiary. The court recognized the distinction between a witness under indictment and one who has already been convicted in *State v. Abbott,* 275 Or 611, 552 P2d 238 (1976):

"Viewed realistically, a refusal to testify by an already convicted accomplice cannot stem from his desire to protect himself and must, therefore, stem from his desire to protect the defendant. [Footnote omitted.] The defendant cannot complain if the jury chooses to draw the logical inference that a truthful answer would have implicated defendant. [Footnote omitted.] * * *" 275 Or at 616-17.

■ Fourth, defendant argues that the prosecutor impermissibly commented upon defendant's failure to testify. During closing argument, the prosecutor made the following statement:

"What has the defense case been in this case? The defendant wasn't out there, the defendant didn't do it, the defendant doesn't know Clark, defendant doesn't know anything about it. What has been their defense in this case?"

Defense counsel immediately objected and, out of the hearing of the jury, the judge admonished the prosecutor about "treading on dangerous ground." Defense counsel then moved for dismissal of the case, which the trial judge denied. When the jury returned, the judge informed them that they were to disregard the last few remarks of the prosecutor and that the defendant had absolutely no burden to prove his innocence but, rather, the burden was "completely" on the state to prove defendant's guilt beyond a reasonable doubt. Instructions to the jury reiterated that proposition. The trial court's curative instructions removed any harmful effect the prosecutor's ambiguous remarks might have had on the jury. *State v. Wederski,* 230 Or 57, 368 P2d 393 (1962); *State v. Macomber,* 18 Or App 163, 524 P2d 574, *rev den* (1974); *State v. Conway,* 2 Or App 49, 465 P2d 722 (1970).

None of the prosecutorial misconduct, individually or collectively, required dismissal with prejudice or granting of a mistrial.

In defendant's third assignment of error, he argues that he was deprived of the right to a speedy trial

guaranteed him by Article I, section 10, of the Oregon Constitution, the Sixth Amendment to the United States Constitution and ORS 135.747.[2] This issue requires a review of the events leading up to defendant's trial.

He was indicted for robbery on February 23, 1978, arrested on February 26, and placed in custody in the Clackamas County jail. He filed a motion to suppress statements made to a fellow inmate during his incarceration and, following a hearing, the trial court granted the motion on May 3. The state appealed. On June 6, 1978, defendant's bail was reduced, and he was released from custody after posting a security deposit.

On December 18, 1978, we reversed the trial court's order in part. *State v. Lowry,* 37 Or App 641, 588 P2d 623 (1978), *rev den* 285 Or 195 (1979). Defendant petitioned the Supreme Court for review, which was denied on February 14, 1979. 285 Or at 195. The mandate was entered on February 27, 1979.

During pendency of the appeal, defendant was indicted and arraigned on a charge stemming from his incarceration in the county jail. When defendant did not appear for a scheduled court date on September 19, 1978, a warrant was issued for his arrest. The next day, however, defendant was arrested in Washington and charged with

---

[2] Or Const Art I, § 10 provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

US Const Amend VI provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon his application or by his consent, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

forgery committed in that state. In January, 1979, he began serving a five-year prison term on the forgery charge in the Washington State Reformatory.

In that same month, detainers based on five charges other than the robbery charge were filed with the Washington authorities. The only apparent reason that no detainer was filed on the robbery charge is that the deputy district attorney assigned to the case did not believe he should file a detainer while the appeal was pending. On May 7, 1979, defendant appeared in circuit court on the robbery charge, and trial was set for June 12, 1979.

Subsequently, the case was assigned to another deputy district attorney who, in preparing for trial, discovered the absence of a detainer on the robbery charge. He brought that matter to the court's attention and on June 7, 1979, moved for a continuance in order to comply with the Agreement on Detainers. ORS 135.755. On June 11, 1979, the court allowed the state's motion, and a detainer was filed on June 24, 1979. On August 2, 1979, defendant filed his demand for trial, which commenced on September 19, 1979.

■ Four factors are considered in analyzing defendant's claim: (1) length of the delay; (2) reasons for the delay; (3) defendant's assertion of the right, and (4) prejudice to defendant. *Barker v. Wingo,* 407 US 514, 530, 92 S Ct 2182, 33 L Ed 2d 101 (1972); *Haynes v. Burks,* 290 Or 75, 82, 619 P2d 632 (1980); *State v. Ivory,* 278 Or 499, 504, 564 P2d 1039 (1977). No single factor is determinative; they all provide relevant criteria in considering the constitutionality of a delay. *Haynes v. Burks, supra,* 290 Or at 81; *State v. Langlois,* 54 Or App 452, 635 P2d 653 (1981).

■ In the present case, the delay from indictment to trial was 19 months, which is sufficiently long to trigger inquiry into the other factors. *State v. Downing,* 4 Or App 269, 478 P2d 420 (1970). The delay was attributable to both the state and defendant. The state had a right to pursue an appeal of the trial court's pretrial order suppressing statements made by defendant. *State v. Jenkins,* 29 Or App 751, 565 P2d 758 (1977). The appeal accounted for seven months of delay. Defendant's petition for review accounted for another two months.

■    Defendant argues, however, that the state's appeal was "frivolous," because the testimony of the witness which we held admissible in *State v. Lowry, supra,* was not used by the state at trial. There is no evidence indicating bad faith on the part of the state in seeking reversal of the order suppressing that witness' testimony and later deciding not to use it. Rather, the record reflects that the decision not to use that testimony was made shortly before trial by a prosecutor newly assigned to the case and was based on the expense of transporting the witness, who was then confined in an out-of-state penitentiary, as well as the witness' susceptibility to impeachment. There was no bad faith.

Defendant asserted his right to a speedy trial from the beginning and, ultimately, as soon as a detainer was filed against him in Washington. That factor weighs in his favor. However, defendant's only "showing" of prejudice is that the testimony of his alleged accomplice could not have been obtained by the state if there had not been the delay. The accomplice, however, refused to testify against defendant at trial. There was no prejudice,[3] and defendant's motion to dismiss was properly denied.

■    Finally, defendant assigns error to the trial court's instructing the jury on second-degree robbery. Because defendant was convicted of first-degree robbery, even assuming that the challenged instruction should not have been given over his objection, it was harmless.

Affirmed.

---

[3] Defendant does not contend that even though he may not have shown sufficient prejudice to warrant dismissal on constitutional grounds, he has shown enough for dismissal under ORS 135.747 (n 2, *supra*). *See Haynes v. Burks,* 290 Or 75, 80-81, 619 P2d 632 (1980). We conclude his showing is not sufficient under either basis.