Argued and submitted August 29, 2001, affirmed August 14, 2002

## STATE OF OREGON,
*Respondent,*

*v.*

## DAVID JOE HOWELL,
*Appellant.*

## C983933CR; A106908

51 P3d 706

Robin A. Jones, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Thomas C. Patton, Assistant Attorney General.

Before Landau, Presiding Judge, and Brewer, Judge, and Collins, Judge pro tempore.

COLLINS, J. pro tempore

## COLLINS, J. pro tempore

Defendant, in a bench trial, was convicted of burglary in the first degree, ORS 164.225, theft in the first degree, ORS 164.055, and criminal mischief in the first degree, ORS 164.365, arising out of a break-in that occurred on or about November 1, 1998. He was also convicted of burglary in the first degree, theft in the first degree, and unauthorized use of a vehicle, ORS 164.135, arising out of a November 7, 1998, entry of the same residence. Defendant appeals his convictions for the November 1 burglary, theft, and criminal mischief, and the November 7 unauthorized use of a motor vehicle.

On appeal, defendant assigns error to three rulings: (1) the trial court's denial of his motion for a judgment of acquittal on the November 1 charges, asserting that there was insufficient evidence; (2) the trial court's grant of the prosecution's motion to exclude the testimony of the victim regarding her scheduled grand jury appearance later that day to testify against other possible defendants, which testimony defendant believes was exculpatory; and (3) the trial court's denial of defendant's motion for a judgment of acquittal on the charge of unlawful use of a motor vehicle, in which defendant argued that his mere sleeping in a car did not constitute "unlawful use." We affirm.

■ Because defendant was found guilty, we view the evidence in the light most favorable to the state. *State v. Hurst*, 147 Or App 385, 388, 936 P2d 396 (1997), *rev den* 327 Or 521 (1998). The residents of the home were away on an extended vacation. They hired Carl Neitch to remodel part of their house while they were away. On Saturday, October 31, Neitch left work at the residence, observing that the condition of the home was undisturbed. On Monday, November 2, 1998, Neitch entered the house and found that the front door had been broken in and the house had been thoroughly ransacked. Every drawer in every room appeared to have been emptied onto the floor. A computer appeared to be missing, and a pillowcase containing purses and video games was abandoned in a hallway. After the police investigated, Neitch nailed up the front door, and the neighbors put the house

back in order. They also unplugged the mechanical garage door opener and locked the garage door. Neitch continued, meanwhile, to work at the house.

On November 7, Neitch was again working in the house. There were no signs of a forced entry on that date and the contents of the house appeared undisturbed. When Neitch, after making a great deal of noise setting up equipment, went to run a compressor hose through the garage, he noticed defendant apparently sleeping in the victims' car. Defendant had in his possession items of the victims' property that would have required a thorough search of the house to locate. The only evidence of such a search was discovered after the November 1 break-in.

Specifically, when found in the car, defendant had the title to the car in his pocket and the spare keys to the car in his lap. One of the victims testified that those items had been in the den next to a jewelry box prior to the first burglary. Defendant also had a reservation confirmation, which, before the first burglary, had been on the kitchen counter with a spare key to the house. A garage door opener was on the passenger floorboard, as was an Oregon map from the glove box.

■    Defendant asserts that there was insufficient evidence to support the convictions arising out of the November 1 break-in. Specifically, defendant argues that no evidence links him to the November 1 break-in and that any inference that he committed the burglary is "utterly unreasonable."[1] Defendant presents several plausible alternative theories that he argues are more likely than the theory under which he was convicted. The state counters that, under our standard of review, a reasonable factfinder could have found, through inferences from the evidence, that defendant was guilty beyond a reasonable doubt. The state is correct.

■    We review the trial court's decision to deny the motion for judgment of acquittal based on the sufficiency of

---

[1] Defense counsel at trial did not argue there was *no* evidence connecting defendant to the November 1 break-in. Trial counsel stated, "At this point, there is no evidence tying [defendant] at all to [the November 1] burglary. Well, I won't say there is no evidence at all. What there is is [*sic*] we have got ambiguous evidence."

the evidence to "determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hurst*, 147 Or App at 388. In *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989), the Oregon Supreme Court explained the standard for reviewing a trial court's ruling on sufficiency of the evidence:[2]

> "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. It is not proper for us to hold that there is a reasonable doubt because of conflicts in the evidence. After a verdict of guilty, such conflicts must be treated as if they had been decided in the state's favor. After the conflicts have been so decided, we must take such decided facts together with those facts about which there is no conflict and determine whether the inferences that may be drawn from them are sufficient to allow the jury to find defendant's guilt beyond a reasonable doubt. Our decision is not whether we believe defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for a jury so to find."

(Citations omitted.)

Here, the state showed that the house was ransacked on November 1 and not on November 7. On November 7, defendant was found with small items of value, such as the spare key to the car and the title to the car, that could not have been easily found without the kind of thorough search of the house that occurred on November 1. In addition, there were no signs of forced entry on November 7, reasonably raising the inference that defendant had entered by using a key taken on November 1. Finally, the court could have also reasonably inferred from the items left in the pillowcase that the November 1 burglar intended to return.

Under our standard of review, we are not free to speculate on what other theories might also be supported by the evidence. The trial court reasonably found defendant guilty beyond a reasonable doubt of the charges related to the

---

[2] *See also State v. Cervantes*, 319 Or 121, 125, 873 P2d 316, *on remand* 130 Or App 147, 881 P2d 151 (1994); *State v. Rainey*, 298 Or 459, 465-68, 693 P2d 635 (1985); *State v. Beason*, 170 Or App 414, 421-23, 12 P3d 560 (2000), *rev den* 331 Or 692 (2001).

November 1 break-in. Consequently, the court did not err in denying defendant's motion for a judgment of acquittal on those charges.

■ Second, we address whether the trial court erred in excluding testimony by one of the victims that defendant contends may have demonstrated that others were involved. Before trial, defendant moved to suppress evidence of a stolen credit card. The credit card had been stolen from the home of another family that was away on vacation, and the state sought to introduce the credit card and the testimony of its owner to show a common plan or scheme in burglarizing the homes. Defendant objected that any connection between himself and the other burglaries was too speculative for the evidence to be reliable. The court agreed and declined to admit any evidence of other burglaries. In his case-in-chief, defendant attempted to question the victim about her testimony before a grand jury scheduled for later that same day. Defendant asserted that the testimony was about other possible conspirators in the burglaries at her home. The state objected, reminding the court that no evidence regarding the other burglaries was to be introduced, since the grand jury investigation focused generally on the series of burglaries. The trial court sustained the state's objection. The state also argued that it had proved defendant's guilt, regardless of whether other parties were also involved.

On appeal, defendant contends that the victim's testimony about the involvement of others was potentially exculpatory. The state contends that the testimony was not material and that defendant did not make a sufficient offer of proof to establish a connection between the testimony and the charges in this case.

We agree with the state's latter contention. The offer of proof at trial, in the form of limited testimony from one of the victims, did not establish that she would testify about other people being involved in the November 1 burglary. Rather, the offer of proof indicated that the victim's testimony might relate to persons involved after the fact in possession of stolen property or an unrelated burglary of her home. The offer of proof may have, at best, established that

the victim's future grand jury testimony had to do with a bur-glary or burglaries of her home; there was no indication of the date, charges, or the victim's knowledge of the involvement of anyone specific. In short, the record simply does not support defendant's assertion that the testimony would be relevant or exculpatory in regard to the charges against defendant in this case and not otherwise hearsay.[3] Accordingly, we affirm the trial court as to the second assignment of error.

■       Finally, defendant asserts that his conduct here was "mere trespass" and did not constitute unauthorized use of the victims' car under ORS 164.135. The state contends that defendant exercised control over the vehicle with intent to steal it and, therefore, violated the statute. We agree with the state.

ORS 164.135(1) provides, in part:

"A person commits the crime of unauthorized use of a vehicle when:

"(a)   The person takes, operates, *exercises control over*, rides in or otherwise uses another's vehicle * * * without consent of the owner[.]"

(Emphasis added.)

We first interpreted ORS 164.135(1)(a) in *State v. Macomber*, 16 Or App 54, 56-58, 517 P2d 344 (1973), *rev'd on other grounds* 269 Or 58, 523 P2d 560 (1974), holding that the statute did not apply only to moving vehicles: " 'exercise of control is not limited to a moving vehicle, for otherwise it would be largely synonymous with "operates," or covered by "riding." ' " *Id.* at 57 (quoting *People v. McCaleb*, 25 NY2d 394, 399, 255 NE2d 136, 138 (1969) (interpreting the New York provision from which the Oregon provision was taken)); *accord*, Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report (July 1970), § 134, 142 ("The purpose of the language, 'takes, operates, exercises control over, rides in or otherwise uses,' is to prohibit not only the taking or driving of another's vehicle

---

[3] The victims were out of town at the time of the November 1 burglary. This vic-tim's knowledge of anyone involved in the burglary would necessarily be based on something someone else told her.

without permission but, also, to prohibit *any* unauthorized use of the vehicle.") (emphasis in original).

On the other hand, "mere entry" and "naked trespass" to the vehicle are not covered by the statute. *State v. Douthitt*, 33 Or App 333, 576 P2d 1262 (1978). In *Douthitt*, the defendant broke into a car and attempted to steal items from it. We held

> "that the new statute requires that the actor manifest an intent to deprive the rightful possessor of possession or to otherwise interfere with the rightful possessor's use of the vehicle, but simply does not cover a naked trespass to the vehicle[.] * * * In this case the only acts affecting the vehicle were opening the locked door and rifling the glove box. Considered as separate acts or a single act, they do not constitute a sufficient exercise of control over the vehicle such that defendant has manifested an intent to affect the rightful possessor's relationship to the automobile, *i.e.*, there was no intention to use the vehicle."

*Id.* at 338.

In this case, defendant had the title to the car in his pocket and the spare keys in his lap. In addition, a garage door opener, previously rendered ineffective by the victims' neighbors, and a map from the glove box lay at defendant's disposal as if he intended to use them. Defendant was more than a mere trespasser. There was evidence from which the trial court could find that he intended to "deprive the rightful possessor of possession" of the vehicle. *Id.* Consequently, the trial court properly found that defendant, without the consent of the owner, exercised control over the victims' vehicle within the meaning of ORS 164.135.

Affirmed.