Argued and submitted January 17, 2020; conviction on Count 1 reversed, remanded for resentencing, otherwise affirmed March 23, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LARRY VINCENT REXROAD,
*Defendant-Appellant.*

Lane County Circuit Court
18CR20971; A170507

508 P3d 520

Defendant appeals a judgment of conviction for one count of unauthorized use of a vehicle (UUV) and one count of tampering with physical evidence. He assigns error to the trial court's denial of his motions for judgment of acquittal for the two counts. Defendant challenged the conviction for tampering with physical evidence on the ground that the state failed to prove that he knew the evidence would be used in an upcoming proceeding. On the UUV conviction, defendant argued that the state failed to prove that he exercised sufficient control of the vehicle or that he had actual knowledge that it was stolen; the state responded that defendant shared control of the vehicle with the person who stole it. *Held*: A reasonable juror could infer that defendant had knowledge that he destroyed evidence related to an upcoming proceeding. Therefore, the trial court did not err by denying a motion for judgment of acquittal on the count of tampering with physical evidence. With regard to the count of unauthorized use of a vehicle, the Court of Appeals concluded that there was no evidence that defendant actually took, operated, or used the vehicle as required by ORS 164.135 (2017). Defendant's only contact with the vehicle at issue was in his communications with the person convicted of stealing it and advertising it for sale. Defendant never physically possessed the vehicle at issue and lacked control for the purposes of principal liability; accordingly, the trial court erred by denying his motion for judgment of acquittal on that count.

Conviction on Count 1 reversed; remanded for resentencing; otherwise affirmed.

Bradley A. Cascagnette, Judge.

George W. Kelly argued the cause and filed the brief for appellant.

Daniel Norris, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

JAMES, J.

Conviction on Count 1 reversed; remanded for resentencing; otherwise affirmed.

**JAMES, J.**

Defendant appeals from a judgment of conviction for one count each of unauthorized use of a vehicle (UUV) (Count 1), ORS 164.135 (2017),[1] and tampering with physical evidence (Count 2), ORS 162.295. In two assignments of error he contends that the trial court erred in denying his motions for judgment of acquittal on both charges. We affirm as to the tampering charge, but agree with defendant as to the UUV charge, and accordingly reverse defendant's conviction for UUV, remand for resentencing, and otherwise affirm.

On review of the denial of a motion for judgment of acquittal, we view the facts in the light most favorable to the state and evaluate those facts to determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005, 115 S Ct 1317, 131 L Ed 2d 198 (1995). To the extent that the parties' dispute about the motion for judgment of acquittal "centers on the meaning of the statute defining the offense, the issue is one of statutory construction," which is a matter of law that we review for legal error. *State v. James*, 266 Or App 660, 665, 338 P3d 782 (2014) (internal quotation marks omitted).

On January 5, 2018, a Mahindra ATV worth approximately $17,000 was stolen from the parking lot of All Seasons Equipment. Detective Rick Lowe located the stolen Mahindra parked at Tracey Coats's house, which led to a subsequent search and seizure of Coats's cell phone. That search revealed that within hours after the Mahindra was stolen, Coats texted to a variety of recipients photos of the ATV, including one photo of the odometer reading 3.1 miles, a video of its dumping bed, and a link to the Mahindra website. One recipient of the text message was defendant. On January 23, 2018, Coats was arrested for a different vehicle

---

[1] The legislature amended ORS 164.135 in 2019, applicable to offenses committed on or after January 1, 2020. Or Laws 2019, ch 530. We apply the 2017 version of the statute, which was in effect when defendant allegedly committed the offense.

theft, and soon after he was charged with the theft of the Mahindra and was later convicted of that crime.

The search of Coats's cell phone also revealed text messages between Coats and defendant regarding another stolen vehicle—one not the subject of this case. In early December 2017, defendant sent Coats photos of a truck being repaired at defendant's workplace because it backfired when it was driven at RPMs above 2,800. The photos included a picture of the owner's vehicle registration and home address. Approximately a week after defendant sent the texts, and after defendant's workplace had completed the repairs and returned the truck to its owner, the truck was stolen while it was parked at the address listed on the vehicle registration in the photo. Additionally, on the day of the truck theft, Coats used his phone to call defendant. Two minutes later, Coats, who had no other connection to the truck other than through defendant, texted an unspecified recipient concerning a vehicle that backfired at 2,800 RPMs: "2800rpms and it studders [*sic*] hard in every gear! Why?" Less than a minute later, Coats used the same phone to conduct several internet searches for online Toyota forums about Toyotas with a shuddering issue when driven at RPMs above 2,000.

On March 14, 2018, Lowe, who knew about the text conversations between defendant and Coats regarding the vehicle thefts, went to defendant's place of work to interview him about the ongoing vehicle theft investigations. During the interview, defendant acknowledged that although he had received a photo of the Mahindra from Coats, he did not know that it was stolen. He also admitted that he had previously sent a photo of the truck to Coats while it was at his employer's shop for repairs, but "basically shrugged" when asked if he had sent Coats a copy of the vehicle's registration.

Defendant also permitted Lowe to look through his cell phone with him. Although the prior data extraction from Coats's phone had revealed a variety of text messages between Coats and defendant in December 2017 and January 2018 about the Mahindra and truck, there were no text messages or phone calls on the phone to or from Coats on March 14. The internet search history, however, revealed that an internet search for Tracey Coats was executed at

10:12 a.m. earlier that morning; 12 minutes after Lowe had arrived at defendant's workplace and 10 minutes prior to the interview. Lowe then asked defendant, "Did you call him this morning? Why would you? You've already deleted them. That's pretty fucking good. So, you already knew what this was all about to begin with." Following Lowe's assertions, defendant grabbed the phone, but Lowe retrieved it from defendant's hands and told him, "I'm seizing your phone as evidence." Lowe and defendant struggled back and forth for the cell phone, as Lowe told defendant he was under arrest. Defendant regained control of the phone and "twist[ed] the phone in different directions as if he [was] trying to break it." Defendant eventually threw the phone in front of him, and it landed about seven feet away. Lowe then arrested defendant for tampering with physical evidence.

Subsequently, the Eugene Police Department searched defendant's phone. Police were unable to extract any data that was deleted from the phone. They were also unable to extract data related to when that information was deleted. The search revealed text messages from defendant's sister, Pauline Rexroad, which defendant received the day after Coats's arrest for the Mahindra theft. One text contained a link to a news story about Coats. The story read that on January 23, Coats was caught stealing a vehicle, and he was arrested and jailed for the theft the same day. He was arraigned on January 24. Another text from Pauline five days later read, "Tracey asked me to ask you to put money on his books."

The search also revealed that on the same morning that the Mahindra was stolen, defendant texted his brother-in-law, Davenport, a photo of the Mahindra, a link to the Mahindra website, and the number "1500." Davenport asked for "recent pics" and said he was "[d]ifferently [*sic*] interested how many miles?" Defendant responded with a photo of the odometer, which he had received from Coats. After consulting with his wife, however, Davenport ultimately decided against purchasing the Mahindra.

At the close of the state's evidence, defendant moved for judgment of acquittal on both charges. Regarding the tampering charge, relying on *State v. Austin*, 265 Or App

140, 333 P3d 1224 (2014), defendant argued that the state provided insufficient evidence to prove that he actually knew that an official proceeding was about to be commenced when he deleted text messages between him and Coats, as required under ORS 162.295. With respect to the UUV charge, defendant argued that the state did not provide sufficient evidence to prove two essential elements of the crime: (1) that defendant exercised sufficient control of the Mahindra and (2) that defendant had actual knowledge that the Mahindra was stolen when he offered it for sale to Davenport. The trial court denied both motions, and the jury found defendant guilty of both charges. This appeal followed, and defendant largely reiterates the arguments made before the trial court. We begin with the tampering charge.

ORS 162.295 provides, in relevant part:

"(1)  A person commits the crime of tampering with physical evidence if, with intent that it be used, introduced, rejected or unavailable in an official proceeding which is then pending or to the knowledge of such person is about to be instituted, the person:

"(a)  Destroys, mutilates, alters, conceals or removes physical evidence impairing its verity or availability[.]"

"Physical evidence" means "any article, object, record, document or other evidence of physical substance." ORS 162.225(3). For purposes of ORS 162.295, "[a] 'belief' about a proceeding that 'might' occur is not the same as 'knowledge' of an actual proceeding that is 'about to be instituted.'" *Austin*, 265 Or App at 144. However, evidence that a defendant knew of an arrest can be sufficient to constitute knowledge of an upcoming proceeding. *State v. Jacobs*, 276 Or App 453, 458, 369 P3d 82 (2016).

Before we apply those principles, we begin by clarifying the point of dispute as to the tampering charge. The state is not alleging that defendant's throwing of the phone constituted tampering. Rather, the state is solely alleging that defendant's deletion of text messages between himself and Coats is the basis for the charge. Further, the state confines its argument to actions taken by defendant on March 14, when law enforcement came to his workplace to

interview him. The question on appeal, therefore, is whether, in the light most favorable to the state, there was evidence, or reasonable, nonspeculative inferences, that defendant (1) deleted text messages on that day and (2) did so with the intent that the text messages be unavailable in an official proceeding that defendant knew to be pending or about to be instituted. Viewing the evidence in the light most favorable to the state, there was enough.

Detectives arrived at defendant's workplace roughly 10 to 12 minutes before they were able to speak with him, and evidence suggests defendant was aware of their presence. A detective observed defendant manipulating his phone before he met with the officers. When Lowe checked the phone's search bar, which showed recent searches made on the phone, Lowe learned that a search for "Tracey Coats" had been made at 10:12 a.m.—shortly after when the detectives first arrived at defendant's work around 10:00 a.m. Texts between defendant and Coats were not on the phone. However, other relevant text threads from the same period of time had not been deleted. Particularly, the thread between defendant and his brother-in-law, the thread between defendant and Coats sent from Coats's girlfriend's phone, and the thread between defendant and his sister had not been deleted. Although those facts are certainly not conclusive, a reasonable factfinder could infer that defendant deleted text messages between himself and Coats in the minutes between when the officers arrived, and when they spoke with him.

As to defendant's knowledge of a pending proceeding, in *Jacobs*, testimony that the defendant knew he was under arrest was sufficient to infer he had knowledge of his own upcoming proceeding when he destroyed evidence. 276 Or App at 458. While the official proceeding in question here was not defendant's own, it was Coats's, that is a distinction without a difference. In *State v. Martine*, the defendant was convicted of attempted tampering with physical evidence because he attempted to destroy what he believed was physical evidence related to his friend's upcoming proceeding; knowledge of someone else's upcoming proceeding may be sufficient to support a charge of tampering with physical evidence. 277 Or App 360, 382, 371 P3d 510 (2016).

A reasonable juror could infer that defendant had knowledge of Coats's upcoming proceeding because he knew Coats was arrested, jailed, and needed money for his "books." On January 23, 2018, Coats was arrested for theft of a vehicle, and he was arraigned on January 24. Also, on January 24, defendant received a text message from his sister, containing a link to a news story regarding Coats's January 23 arrest. Another text from his sister indicated that Coats was in jail and wanted money from defendant. On this record, viewing the evidence in the light most favorable to the state, the trial court did not err in denying the motion for judgment of acquittal as to the tampering count.

Turning now to the UUV count, ORS 164.135 (2017) provides, in relevant part:

"(1)   A person commits the crime of unauthorized use of a vehicle when:

"(a)   The person takes, operates, *exercises control over*, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner[.]"

(Emphasis added.)

There is no evidence that defendant ever actually took, operated, or used the Mahindra. No one disputes that Coats, not defendant, physically possessed the vehicle. Defendant's only contact with the Mahindra was receiving, along with other people, Coats's text, and in advertising it for sale. However, the state argues on appeal that evidence in the record supports a reasonable inference that Coats and defendant were operating as a coordinated team— identifying, stealing, and then selling vehicles. As the state argues, "[t]he jury could reasonably infer that Coats and defendant shared control of the vehicle *** and that defendant thus had the ability to deprive the owner of possession." We understand the state's argument on appeal to be analogous to a type of constructive possession theory of "control." As we have explained in other contexts, "[a]ctual possession requires '*actual* physical control of the property'" whereas, "[c]onstructive possession *** is less direct, and describes a person's relationship to property found under the physical control of someone else or of no one at all." *State v. Sanchez-Anderson*, 300 Or App 767, 774, 455 P3d 531, 536

(2019) (internal citations omitted). Here, the state argues that control, for purposes of ORS 164.135(1)(a) (2017), can be shown by, in essence, having "the ability to" control. That presents a question of statutory construction.

As with all matters of statutory construction, our paramount goal is to determine the legislature's intent. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). Our first step in determining legislative intent is examination of the text and context of the pertinent statute followed by consideration of legislative history to the extent it "appears useful to [our] analysis." *Id.*

As the parties note, the statute does not provide a definition of "control." When the legislature fails to define a term, we begin with the plain and ordinary meaning. *Central Oregon Landwatch v. Deschutes County*, 276 Or App 282, 289-90, 367 P3d 560 (2016) (noting that if the legislature has not defined a term, we consider dictionary definitions to aid in our understanding of its plain meaning). *Webster's* defines the verb "control" as "**4a**(1) **:** to exercise restraining or directing influence over **:** regulate, curb <*control* one's anger> <*controlling* her interest in the enterprise> (2) **:** to have power over **:** rule <a single company *controls* the industry>." *Webster's Third New Int'l Dictionary* 496 (unabridged ed 2002) (emphasis and boldface in *Webster's*).

We have previously interpreted "control" as encompassing actions beyond the terms of "operating" or "riding" in a vehicle; thus, barring the owner or others from entry into a car might constitute control, as might the temporary use of a nonmoving vehicle. *State v. Macomber*, 16 Or App 54, 56-58, 517 P2d 344 (1973), *rev'd on other grounds*, 269 Or 58, 523 P2d 560 (1974) (holding that alterations a defendant made to a truck belonging to another was an "exercise of control" sufficient to satisfy ORS 164.135(1)(a)).

In contrast, we have said that simply entering a vehicle or using another's personal belongings within a vehicle, without depriving the owner of some form of use of his or her vehicle, does not satisfy the "control" element. *State v. Douthitt*, 33 Or App 333, 338, 576 P2d 1262 (1978) (holding that a defendant did not exercise "control" over a vehicle when he unlocked a parked car door through an open

window, rifled through the glove box, put on a coat that was lying in the back seat, and lied to a police officer that the broken-down vehicle was his friend's, who had gone for help). Rather, control requires the manifestation of "an intent to deprive the rightful possessor of possession or to otherwise interfere with the rightful possessor's use of the vehicle, but *** does not cover a naked trespass to the vehicle." *Id.*; *see also State v. Howell*, 183 Or App 360, 366-67, 51 P3d 706 (2002) (holding that a defendant exercised "control" over a vehicle because he intended to deprive the rightful owner of possession as exhibited by breaking into the car and attempting to steal the title, spare keys, a broken garage door opener, and a map from the glove box).

We also consider the legislative history of the statute, to the extent it "appears useful to the court's analysis," as is the case here. *Gaines*, 346 Or at 172. We find two provisions of the commentary particularly relevant. First, with respect to the original enactment of the text at issue, the Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 134 (July 1970), notes that "[t]he purpose of the language, 'takes, operates, exercises control over, rides in or otherwise uses,' is to prohibit not only the taking or driving of another's vehicle without permission but, also, to prohibit *any* unauthorized use of the vehicle." *Id.* (emphasis in original). Second, the commentary notes the limitations of the statute: "The section is meant to include the kinds of acts covered by ORS 164.670, the existing 'joy-riding' statute, as well as conduct such as manipulating, starting or tampering with motor vehicles (ORS 164.650, 164.660)." *Id.*

The plain meaning of control, read with an eye to the legislative history of the statute, is in tension with the state's "constructive control" argument. We have previously noted that, at its core, "constructive possession is a way to broaden *** possession beyond actual physical control." *See State v. Casey*, 346 Or 54, 203 P3d 202 (2009); *see also* Wayne R. LaFave, 1 *Substantive Criminal Law* § 6.1(e), 433 (2d ed 2003) ("Constructive possession, which is simply a doctrine used to broaden the application of possession-type crimes to situations in which actual physical control cannot be directly proved, is often described in terms of dominion and control."

(Footnote omitted.)); *see also* Charles H. Whitebread & Ronald Stevens, *Constructive Possession in Narcotics Cases: To Have and Have Not*, 58 Va L Rev 751, 755 (1972) (noting that constructive possession expands the scope of possession statutes to include instances where actual possession cannot be shown but where there is a strong inference that actual possession did exist at one time).

We find little support that the legislature intended ORS 164.135(1)(a) (2017) to be broadened by concepts of constructive possession, or to be untethered from actual physical control. First, the legislature could have used the more flexible term of "possession" but did not; it used the term "control." The statute was specifically enacted by the legislature to replace a "joy-riding" statute which, by its nature, contemplates actual, exercised, physical control. Finally, we note the presence of other statutes that would encompass the acts alleged here. ORS 164.095(1) prohibits theft by receiving:

> "A person commits theft by receiving if the person receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft."

The state could have, but did not, charge defendant with violating ORS 164.095(1). We are not called upon to determine if the state's "constructive control" theory would support a charge of aiding and abetting UUV, ORS 161.155, ORS 164.135(1)(a) (2017). Here, the state proceeded solely upon principal liability.

The record shows that Coats sent defendant, as well as multiple other persons, a text message trying to find a buyer for the stolen vehicle. Defendant never physically possessed the vehicle, or apparently even knew its current location. Defendant was acting as a potential broker, or "fence," finding a buyer to introduce to Coats. That is certainly criminal activity, but it does not demonstrate the "control" required for principal liability for UUV, ORS 164.135(1)(a) (2017). The trial court erred in denying defendant's motion for judgment of acquittal on the UUV charge.

Conviction on Count 1 reversed; remanded for resentencing; otherwise affirmed.