Breitel, J.
The People appeal in two cases involving the class A misdemeanor of unauthorized use of a vehicle (Penal Law, § 165.05, subd. 1).
The issues are: whether the statute makes criminal the occupation, without any locomotive use, of another’s motor vehicle without his consent; and whether the statutory presumption of knowledge of the owner’s nonconsent is constitutionally valid.
Defendant Gary Gibbs[1] was convicted after trial before a three-Judge Bench of the Criminal Court of the City of New York and sentenced to an indefinite reformatory term. The Appellate Term reversed the conviction “ on the law and facts ” and dismissed the complaint, one Judge dissenting.
*397 ' Defendant Leotis McCaleb was convicted after trial before a three-Judge Bench of the Criminal Court of the City of New York, one Judge dissenting, and sentenced to three months’ imprisonment. The Appellate Term reversed the conviction “ on the law and facts ” and dismissed the complaint, one Judge dissenting for the reasons stated in People s. Gibbs.
Defendants were each found in different parked automobiles which had been taken and moved without the permission of their owners. When-apprehended, McCaleb was seated in the rear of an automobile, its engine turned off, but a working key in the ignition. Gibbs was found sleeping in the front passenger seat of a vehicle whose motor was running. Both automobiles had been reported as stolen within nine hours of the arrests.
The People contend that the conduct of each defendant constituted an unauthorized use of a vehicle. They also urge as valid and consistent with due process the statutory presumption that one who uses a vehicle without the consent of thq owner knows he does not have such consent.
The convictions were not properly reversed on the law and there should be new trials.
Section 165.05 of the Penal Law provides, in pertinent part:
‘ ‘ A person is guilty of unauthorized use of a vehicle when:
“ 1. Knowing that he does not have the consent of the owner, he takes, operates, exercises control over, rides in or otherwise uses a vehicle. A person who engages in any such conduct without the consent of the owner is presumed to know that he does not have such consent * * * Unauthorized use of a vehicle is a class A misdemeanor.”
Defendants argue that the quoted section should be narrowly construed; that its specification of prohibited conduct refers only to vehicles in motion and that, similarly, the phrase "otherwise uses ’ ’ should be confined to conduct involving moving vehicles. It is emphasized, in support of this view, that the section is derived from section 1293-a of the old Penal Law, which was intended to punish only “joy riding,” and that, also, the present section is found in article 165 of the new Penal Law, devoted to and headed “ Other Offenses Relating to Theft.” It is suggested that, since no theft with the element of asportation is involved, defendants ’ conduct is more akin to criminal trespass *398 in the third degree (Penal Law, § 140.05)[1] or loitering (Penal Law, § 240.35, snbd. 8), both of which are violations, rather than class A misdemeanors.
Notably, the comments of the staff of the State Commission on Revision of the Penal Law and Criminal Code, are limited to the problems of “ joy riding ” and indicate the design of the drafters to include those riding in a vehicle who know they do not have permission of the owner, although they may not have taken part in the initial taking (see Commission Staff Notes on the Proposed New York Penal Law, § 170.10, Gilbert Criminal Code and Penal Law [1968], pp. 1C-74-1C-75).
The Appellate Term, in reversing, presumably considered the statute narrow in scope, and the analysis in Matter of Diane S. (18 N Y 2d 973 [decided under old Penal Law, § 1293-a]) applicable.
A reading of the present statute, and a comparison of its language with that of its predecessor, however, reveal that its scope may not be so narrowly limited. Old section 1293-a provided that "Any person who * * * shall, without the consent of the owner, take, use or operate * * * an automobile * * * steals the same, is guilty of larceny and shall be punishable accordingly” (emphasis added).
The old section was strictly construed in Matter of Diane S. (18 N Y 2d 973, supra, revg. Matter of Anonymous, 26 A D 2d 673) and held inapplicable to one who accepts a ride in an automobile, even if that one knows the vehicle to have been taken without the consent of the owner, unless the rider was actually implicated in the taking.
The present statute goes far beyond an attempt to include merely those who become passengers in a moving vehicle after the wrongful taking.
In the old law, “ use ” was sandwiched between “ take ” and “ operate.” Not only did its meaning derive color from the words with which it was associated, but its position between words of narrower connotation markedly limited any independent broader significance it might otherwise have. Hence, the conclusion by this court that it related to the asportation of a moving vehicle and involvement in such asportation.
*399 In contrast, the addition in the new statute of "exercises control over ” and “ rides in ” indicates that a broader range of conduct was being prohibited. Certainly, the “ rides in ” language no longer limits the crime to involvement in the asportation. That the word ‘ ‘ uses ’ ’ was also to have added importance in the new statute is evidenced by its placement at the end of the enlarged specification of prohibited conduct. Its independent meaning is underscored by its inclusion in the extended phrase “ or otherwise uses ”. In that phrase the term “ otherwise ” serves only the purpose of broadening rather than narrowing the connotation of the word following it, namely, "uses
The addition of the phrase “ or otherwise uses ” without consent of the owner was not just an attempt to overrule legislatively the Diane 8. case (supra), for, as already noted, one who rides without the owner’s permission in a vehicle is explicitly covered by the statute. That the other use is not confined to operating or riding in the vehicle is indicated by the addition in the present statute of the phrase “ exereis[ing] control over ” the vehicle. The exercise of control is not limited to a moving vehicle, for otherwise it would be largely synonymous with “ operates,” or covered by “ riding ”. Thus barring the owner or others from entry into the car might constitute such control, as might the temporary use of the vehicle, or its motor, for a purpose accomplished while the vehicle remains or has become stationary. Moreover, by lowering the grade of crime from felony, if the value of the vehicle qualifies, to misdemeanor, the Legislature, understandably, included conduct less serious than that covered by the old statute and there treated as larceny.
Finally, it is argued that the conduct in these cases does not fit the article heading of ‘ ‘ Other Offenses Belating to Theft ’ ’ and is related more to criminal trespass in the third degree (Penal Law, § 140.05, knowingly entering unlawfully on premises[2]) or loitering (Penal Law, § 240.35, subds. 6, 8) both of which are violations only.
Both the organized and unorganized modes in the stealing of motor vehicles, and the sometimes difficult-to-distinguish “ joy riding ” offense, create special problems of proof as compared with loitering and entries into or upon real property. They are intimately involved in the suppression of widespread true auto *400 mobile larceny; they have little resemblance to the problems in loitering or to the breaking and éntry problem in burglary, and still less to nonlarcenous trespass to real property. Moreover, some of these “ violations ” either involve offenses of very low grade or only acts of preparation and undeveloped intent associated with inchoate crimes. Hence, defendants’ arguments based on classification of offenses or the captions in the new Penal Law are not persuasive in the instant cases.
The defendants also challenge the presumption 'contained in section 165.05 (subd. 1) to the effect that “ [a] person who engages in any such conduct without the consent of the owner is presumed to know that he does not have such consent ”. It is argued that there is no adequate connection between the fact proven and the. ultimate fact presumed, namely, knowledge.
The test for this connection, which must satisfy due process, has been often defined. In People v. Terra (303 N. Y. 332, 335, app. dsmd. for want of a substantial Federal question, 342 U. S. 938), upholding the presumption of possession by all persons occupying the place where a machine gun is found, the test was variously phrased as “ whether, based on life and life’s experiences, a rational connection between the fact proved and the ultimate fact presumed may be said to exist [citing, among others, Tot v. United States, 319 U. S. 463, 467-468].” The court also quoted from People v. Cannon (139 N. Y. 32, 43) that" ‘ the fact upon which the presumption is to. rest must have some fair relation to, or natural connection with the main fact ’ ” and from Morrison v. California (291 U. S. 82, 90) that “ ‘ [w]hat is proved must be so related to what is inferred * as to be at least a warning signal * * * experience must teach that the evidence held to be inculpatory has at least a sinister significance ’ ”.[3]
The presumption of section 165.05 (subd. 1) satisfies these tests. There is a “ fair ” natural ” and “ rational ” connec *401 tion between the fact that a car is being used without permission of its owner, and the presumption that those in the car, driver and passengers alike, are aware they do not have permission. The likelihood of innocent use or occupation of a “ stolen ” vehicle is minimal, and in the rare instance could be easily explained, presenting no more than a light burden of going forward to make such explanation. Thus, the friend or companion may show, by creditable proof, that he innocently accepted an invitation to enter a vehicle which, unknown to him, had been previously taken wrongfully. In that event a heavy burden will have been placed on the prosecution to negative this rebuttal of the presumption, in order to sustain conviction based on proof beyond a reasonable doubt (see McCormick, Evidence [1954], § 313, p. 662). But the unexplained use or presence in a stolen vehicle has a ‘ ‘ sinister significance ’ ’ sufficient to justify the presumption that the unauthorized use is with knowledge. (See People v. Crawford, 56 Misc 2d 348.) Indeed, it may be said that the inference under the instant statutory presumption is stronger than others previously upheld, such as the presence in an automobile of a firearm being presumptive of the weapon’s possession by all the occupants (People v. Russo, 303 N. Y. 673; People v. Gerschinsky, 281 N. Y. 581).
It is urged, however, that, by reason of the language used in Leary v. United States (395 U. S. 6, 36), a criminal presumption is “ irrational ” or “ arbitrary ” and hence violative of due process ‘ i unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.”
In the Leary case the defendant was convicted of the crime of transporting illegally imported marihuana, with knowledge of its illegal importation. The statute provided that: "Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury ” (U. S. Code, tit. 21, § 176a). Significantly, application of the statute was held to involve a double presumption: that the seized marihuana in question had in fact been illegally imported and that the defendant had the requisite knowledge of such illegal importation.
*402 Notably, in the Leary case (supra), the Supreme Court dealt primarily with the presumption of knowledge and expressly did not pass upon the constitutionality or validity of the presumption of illegal importation. The court held that “ a criminal statutory presumption must be regarded as ‘ irrational ’ or 'arbitrary, ’ and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend ” (395 U. S., at p. 36). It then found that the presumption of knowledge did not satisfy this test.
Admittedly, to sustain a conviction, knowledge must have been based on the logically initial presumption that the marihuana was, in fact, illegally imported. Of such illegal importation of the particular marihuana there was no conclusive proof or certainty, only a very high probability. Of course, if the marihuana were of domestic origin, the Federal crime had not been committed. In the instant cases, by contrast, there is no doubt and indeed it is conceded that neither the defendants nor any others had been given permission from the cars’ owners to operate or use them, and it is, therefore, undisputed that defendants occupied “stolen” cars. Hence, as to the subject matter of the allegedly unlawful possession, contraband or stolen goods, there was, in the Leary case, only a very high probability, dependent upon a presumption, while in the instant cases there is proof beyond a reasonable doubt.
Although there was a very high probability that the marihuana possessed by defendant was imported, the court concluded that, even so, it could not also be established with substantial ‘ ‘ assurance,” that the possessor was aware of the probabilities that the marihuana was illegally imported. Because, in the case of mere possessors whd are not sellers of marihuana, their knowledge of the sources of the marihuana is not readily apparent, and because in the factual context of the Leary case, it was necessary to build one presumption upon another, the court understandably found it necessary to analyze the empirical data underlying both the presumptions embraced in the Federal statute. Concerning the presumption of knowledge, analysis “ of the available materials” failed to establish “that a majority of marihuana possessors either are cognizant of the apparently high rate of importation or otherwise have become aware that *403 their marihuana was grown abroad” (395 U. S., at p. 47 [emphasis in original]).
The well-established criterion for evaluating the validity of a criminal statutory presumption is comprehensively discussed by McCormick in his treatise on evidence where he states: “ Doubtless, upon analysis, the courts which demand ‘ rational connection ’ for the statutory presumption would be driven to decide that it is * * * probative sufficiency in the sense of something more than a fifty-fifty chance, that they are demanding.” It is recognized that “ ‘ reasonable connection ’, even in [this] stricter sense, becomes merely a requirement that the legislature must not appear to have lacked a reasonable basis for considering the facts proven enough to support the inference.” (Op. cit. supra § 313, at p. 660; see the entire section 313 for an excellent resume; 22A C. J. S., Criminal Law, § 579, pp. 331-332; cf. Ann.: Lottery Device-Statutory Presumption, 17 A.L.R. 3d 491, 492, § 2.)
Moreover, the peculiar “ piggyback ” effect of the doubling of the statutory presumption in the Leary case {supra) suggests that that case involves no radical departure from the acceptance of a statutory presumption based on a rational connection between the fact proven and the fact presumed, but rather places the gloss of “ substantial assurance ” and the requirement of a better than even chance of probability on the existent test, something that is also suggested by the McCormick treatise. That test is, of course, as already observed, the prevailing test in this State as articulated and restated in the Terra case {supra).
Thus, accepting the requirement in the Leary case that there must be “ substantial assurance that the presumed fact is more likely than not to flow from the proved fact ”, the instant presumption is valid. Presence in a “ stolen ’ ’ vehicle is much more likely, assuming dubiously, that a mere margin of higher probability (more than 50%) suffices to support a presumption of knowledge of the vehicle’s status in a criminal case. Actually, the degree of probability involved is vastly greater than 50%. Indeed, the District Attorney, in the McCaleb case, argues quite soundly, it would appear, that: “It is apparent that the Legislature in enacting the subject statute, took into consideration the nature of youthful persons, who in taking automobiles *404 belonging to others, and without permission from the owners, do so, in the main, to enjoy the use of the vehicle, rather than for pecuniary gain. ‘ Joy riding ’ is not a practice engaged in by a single youth. It is almost always conducted in the company of others, since by the very nature of youth exhibitionism and bravado are predominant characteristics. It is rare indeed that one youth, in the company of another with an automobile, does not know the true connection of his companion with the vehicle. ’ ’
As already noted, the instant statutory presumption satisfies the standards treated in the Terra case (supra), does not offend any of the principles elucidated so well in the McCormick treatise (loc. cit. supra), and may be subsumed as valid under the analysis expressed in the Leary case. There is a rational connection between the presumed fact and the given evidence, and a reasonably high degree of probability is present sufficient to justify placing the relatively light burden of going forward on the defense.
Since it is concluded that the presumption satisfies due process, it need not be decided whether other evidence of defendants’ conduct, standing alone, was sufficient to establish the requisite knowledge of the defendants that they had no permission.
Although the Appellate Term’s reversal and dismissal in each case “ on the law” was error, its reversal “ on the * * * facts ’ ’ is not reviewable by the court. Such a reversal on the facts, however, does not require the dismissal to stand but results in the ordering of a new trial (see Cohen and Karger, Powers of the New York Court of Appeals, § 202, p. 758).
Accordingly, the orders below should be reversed and the cases remanded for new trials.
Judges Burke, Scileppi, Bergan, Jasen and Gibson concur with Judge Breitel; Chief Judge Fuld concurs in result only.
In each case: Order reversed and case remitted to the Criminal Court of the City of New York for further proceedings in accordance with the opinion herein.

. Although the information initially named Gary Gills, defendant testified at the trial that his name was Gibbs, and was thereafter referred to by that name.

. Penal Law, § 140.05 has since been amended (L. 1969, ch, 341, §§ 3, 4).

. Since amended (see L. 1969, ch. 341, §§ 3, 4).

. See, also, for an interesting .application of these principles, United States v. Gainey (380 U. S. 63, 66-68) upholding the rationality of the connection between unexplained presence at an illegal still and carrying on the business of a distiller, and United States v. Romano (382 U. S. 136, 141), holding that the connection between presence at the site and possession, as distinguished from carrying on the business of a distiller, is “arbitrary” and “too tenuous to permit a reasonable inference of guilt”.