In the Interest of J.D.

Damon ANDERSON, Petitioner and Appellee,

v.

J.D., (Minor), Respondent and Appellant,

S.N., (Mother), M.D., (Father), Respondents.

Cr. No. 920171.

Supreme Court of North Dakota.

Dec. 22, 1992.

Damon E. Anderson (argued), Asst. State's Atty., Grand Forks, for petitioner and appellee.

Kerry S. Rosenquist (argued), of Arnason Law Office, Grand Forks, for respondent and appellant.

LEVINE, Justice.

J.D., a juvenile [hereinafter Dale] [1] appeals from a juvenile court order confirming a referee's determination that he committed the delinquent act of unauthorized use of a motor vehicle in violation of Section 12.1–23–06, N.D.C.C. [2] Because we conclude that the State failed to prove that Dale exercised control over the car, we reverse the juvenile court order.

On the evening of October 24, 1991, Dale and two other juveniles, J.C. [John] and M.J. [Michael] gathered at Michael's house. John had been using a 1975 Plymouth Duster which his father, Roger, owned. At approximately 10:00 p.m. Roger arrived at Michael's house and, in the presence of the three boys, Roger told John that he could not use the car. Roger then drove the car back to his home.

The three boys stayed at Michael's home that night. John testified that sometime between 5:00 and 6:00 a.m. on October 25th, "we were talking to two [juvenile] girls and ... [Michael] wanted to go get them and I said, you know, yeah sure." Although Dale was present during the telephone call, there was no evidence that he participated in either the call or the subsequent decision to take Roger's car and pick up the two girls. Dale, not wanting to stay alone at Michael's house, accompanied John and Michael part way but then waited about one block from Roger's house while John picked up the car. After taking the car, John picked up Michael and Dale and the two girls and the group went to McDonald's to eat. Afterward, one of the girls drove the other four juveniles back to Michael's house. John, feeling sick, went into Michael's house, while the other four remained in the car. Michael then went to look for John. According to Dale, Michael returned to the car and informed the passengers that John said they could use the car. One of the girls then drove the other three young people around town in Roger's car. At no time that morning, did Dale drive Roger's car; instead, he occupied a back seat.

At about 8:30 a.m. on October 25, Roger noticed that his car was gone and he went to Michael's house to look for it. Not finding his car at Michael's house, he was on his way home when he saw his car being driven by the juvenile girl accompanied by three juvenile passengers. John was not in the car; Roger signaled the driver to stop the car. Dale testified that he told the female driver to stop; however, she refused and continued to Michael's house. Roger followed them and summoned the police.

The State petitioned to have Dale declared a delinquent child, alleging that he committed the delinquent act of unauthorized use of a motor vehicle. After a hearing, a referee made an oral finding that Dale exercised control over the car with knowledge that Roger had not consented.

---

1. All the names used in this opinion are pseudonyms.

2. Under Section 27–20–02(3), N.D.C.C.. a "delinquent act" means an act designated as a crime under the laws of this state. Section 12.1–23–06(1), N.D.C.C., provides:

"1. A person is guilty of an offense if, knowing that he does not have the consent of the owner, he takes, operates, or exercises control over an automobile, train, aircraft, motorcycle, motorboat, or other motor-propelled vehicle of another."

The juvenile court confirmed the referee's written findings. Dale appealed, contending that the evidence was insufficient to establish that he committed the delinquent act of unauthorized use of a motor vehicle.

■ Although a juvenile court's findings are entitled to appreciable weight, we are not bound by those findings and we independently review the evidence in a manner similar to a trial de novo. *Huff v. K.P.*, 302 N.W.2d 779 (N.D.1981); Section 27–20–56, N.D.C.C.

■ Section 27–20–29(2), N.D.C.C., requires the State to prove beyond a reasonable doubt that Dale committed the delinquent act of unauthorized use of a motor vehicle. Under Section 12.1–23–06(1), N.D.C.C., a person is guilty of unauthorized use of a motor vehicle if, knowing the owner has not consented, the person takes, operates, or exercises control over the vehicle. Those statutes require the State to prove two elements beyond a reasonable doubt: (1) that Dale took, operated, or exercised control over Roger's car, and (2) that Dale knew that Roger had not consented.

Dale first argues that the State did not prove beyond a reasonable doubt that he knew Roger had not consented to John's use of the car. Dale asserts that he believed that John had asked for and received permission from his father to take the car on the morning of October 25.

■ Section 12.1–02–02(1)(b), N.D.C.C., provides that a person engages in conduct knowingly if "when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so." Knowledge need not be absolute but merely a firm belief unaccompanied by a substantial doubt. *State v. Kaufman*, 310 N.W.2d 709 (N.D.1981). Knowledge is a question of fact and may be established by circumstantial evidence. *Id.*

■ Roger testified that he told John, in Dale's presence, that John could not use the car. According to John, when he went to Roger's house to get the car, he told Dale and Michael to wait one block away

"in case [Roger] gets up or something and start[s] yelling and stuff." Although Dale testified that John said he was going to talk to Roger before taking the car, John testified that he did not tell Dale that he was going to ask his father for permission before taking the car. Roger also testified that when he saw the juvenile girl driving his car the next morning, Dale ducked down in the back seat. Reviewing this evidence de novo, while giving appreciable weight to the juvenile court's findings, we believe it establishes that Dale had a firm belief, unaccompanied by a substantial doubt, that Roger had not consented to the use of his car. We conclude that the State proved the element of knowledge.

■ Dale next argues that the State failed to prove beyond a reasonable doubt that he took, operated, or exercised control over the car. On this point, we agree.

In denying Dale's motion to dismiss after the State rested, the referee agreed that Dale did not "take" or "operate" the car. But, after hearing all the evidence, the referee orally found that Dale exercised control over the car:

"when he was in the car pursuant to the testimony that we heard from was he was exercising control over that particular vehicle. At that particular time, you are—if you're a passenger with somebody else in a car under certain circumstances like this, you're part of the exercising control over that particular vehicle. There are many, many types of examples that we could give people being together on things. You're all together in it, you're all involved, if you're all caught, you're all chargeable and so on and so forth and all kinds of things like that. Possession—just like possession of stolen property—if you have access to it, constructive possession, if it's sitting out here we're—we're all in possession of something that we can have access to. And you were in the car and you have access to it and you were riding around in it...."

Thus, the referee equated Dale's presence in the car with the exercise of control

and made a written finding that Dale committed the delinquent act of unauthorized use of a motor vehicle. Without delineating any different rationale, the juvenile court approved and confirmed the referee's finding. Because the referee's decision was based on the finding that Dale exercised control over the car, we focus on the meaning of the statutory language "exercises control." [3]

Dale argues that his mere presence in the car is insufficient to show that he exercised control over the car. He asserts that one who exercises control over a car, must have had a "directing influence" over the car. We agree.

The interpretation of a statute is a question of law and is fully reviewable by this court. *State v. Rambousek,* 479 N.W.2d 832 (N.D.1992). In construing a statute, our primary objective is to ascertain the intent of the Legislature. *Id.* Words in a statute are understood in their ordinary sense, unless they are defined by statute. *State v. Larson,* 479 N.W.2d 472 (N.D.1992).

Ch. 12.1, N.D.C.C., does not define "exercises control." However, Section 12.1–23–06, N.D.C.C., is identical to Section 1736 of the Final Report of the National Commission on Reform of Federal Criminal Laws. It was derived from the proposed federal criminal code and so we look to the official commentary of that code for guidance in construing our statute. *State v. Bastien,* 436 N.W.2d 229 (N.D.1989). While the official commentary to Section 1736 does not define "exercises control," it says that Section 1736 is "very close" to N.Y.Rev.Pen.Law § 165.05 (McKinney

1967).[4] Comment on Theft Offenses: §§ 1731–1741, Working Papers of the National Commission on Reform of Federal Criminal Laws, Volume 2, p. 939 (1970). Although the New York statute is similar to Section 1736 and Section 12.1–23–06(1), N.D.C.C., the New York statute prohibits a wider range of conduct, i.e., "rides in or otherwise uses a vehicle." Despite that broader language, the New York courts have provided some insight into the meaning of "exercises control."

In *People v. McCaleb,* 25 N.Y.2d 394, 399, 306 N.Y.S.2d 889, 892, 255 N.E.2d 136, 138 (1969), the New York Court of Appeals addressed the meaning of "exercising control" in its analysis of the "otherwise uses" language:

> "The exercise of control is not limited to a moving vehicle, for otherwise it would be largely synonymous with 'operates,' or covered by 'riding'. Thus barring the owner or others from entry into the car might constitute such control, as might the temporary use of the vehicle, or its motor, for a purpose accomplished while the vehicle remains or has become stationary."

Later New York cases have supplemented that discussion of "exercises control" to require some degree of authority or command over the car. *People v. Butler,* 119 Misc.2d 1071, 465 N.Y.S.2d 477 (N.Y.Sup. Ct.1983) [actor must exercise some degree of control over the car's confines or mechanism]; *People v. Murray,* 143 Misc.2d 509, 541 N.Y.S.2d 331 (N.Y.Crim.Ct.1989) [exercise of control requires some degree of control as manifested by a present ability to set the car in motion]. *See also State v.*

---

**3.** Although the State claims that Dale participated in a "joint enterprise" to take Roger's car, our review of the juvenile court's decision indicates that this case was decided on the "exercises control" language. At the juvenile hearing, there was evidence of a telephone call to the two juvenile girls but no evidence that Dale made that call or participated in it. There was evidence that Dale accompanied John and Michael to within one block of Roger's house when John picked up his father's car; however, there was no evidence that Dale participated in the decision to take Roger's car and pick up the two girls. The evidence does not support the State's

claim that Dale participated in a joint enterprise to take the car. Instead, the evidence supports the referee's determination that Dale did not take the car. Accordingly, our analysis focuses on "exercises control."

**4.** N.Y.Penal Law § 165.05, provided:

"A person is guilty of unauthorized use of a vehicle when:

"1. Knowing that he does not have the consent of the owner, he takes, operates, exercises control over, rides in or otherwise uses a vehicle."

*Douthitt,* 33 Or.App. 333, 576 P.2d 1262 (Or.Ct.App.1978) [under statute nearly identical to New York,[5] "exercises control" requires actor to manifest an intent to deprive the owner of possession or to otherwise interfere with the owner's use of the car and does not include a naked trespass].

A related part of our theft statutes, Section 12.1–23–02(1), N.D.C.C., uses similar language. It says that a person is guilty of theft of property if that person "[k]nowingly takes or *exercises unauthorized control* over ... the property of another with intent to deprive the owner thereof." [Emphasis added]. That statute is identical to Section 1732 of the proposed federal criminal code which was patterned after an Illinois theft of property statute. Comment on Theft Offenses: §§ 1731–1741, Working Papers of the National Commission on Reform of Federal Criminal Laws, Volume 2, p. 915 (1970).

In discussing the Illinois statute,[6] the Illinois Court of Appeals explained that " 'control' has no legal or technical meaning distinct from its popular acceptation." *People v. Bullock,* 123 Ill.App.2d 30, 33, 259 N.E.2d 641, 643 (1970). Under nearly identical theft of property statutes, "control" has been construed to require some direction or command over the property. *See Irvin v. State,* 501 N.E.2d 1139 (Ind.Ct. App.1986) [under criminal conversion statute, defendant's mere presence in stolen automobile, without evidence that defendant exercised any type of control over driver, did not constitute exertion of control over automobile]; *Clarkson v. State,* 486 N.E.2d 501 (Ind.1985) [under theft statute, a passenger exercises control over car by forcing driver, at gunpoint, to drive one hundred miles].

■ Those authorities indicate that "exercises control" requires some degree of command or authority over the car. That

analysis comports with the ordinary meaning of "control," which is to "exercise authority over; direct; command." Webster's New World Dictionary of the American Language 309 (2nd College Ed.1980). Construing the meaning of the "exercises control" language in Section 12.1–23–06(1), N.D.C.C., in its ordinary sense, we conclude that it requires an actor to exercise some degree of authority, direction, or command over the car.

We are not persuaded by the State's argument that a person exercises control over a car if that person is in a moving car with knowledge that the owner has not consented. Knowledge and the exercise of control are each separate elements of unauthorized use and one cannot, therefore, define the other. Every word of a statute must be given meaning if possible. *Flermoen v. North Dakota Workers Compensation Bureau,* 470 N.W.2d 220 (N.D. 1991). Unlike the New York statute which defines unauthorized use of a vehicle as "rid[ing] in or otherwise us[ing] a vehicle" with knowledge that the owner has not consented, Section 12.1–23–06(1), N.D.C.C., does not criminalize "riding in" a car. More is required—a person must "exercise control" over the car, which, we believe, encompasses more than merely riding in the car. Instead, it requires some degree of authority, direction or command over the car.

In this case, the State called only Roger and John to testify. Neither Michael nor the two girls testified. Although Roger testified that he had not given anyone permission to use his car, his testimony does not indicate that Dale exercised any authority, direction or command over the car. John described the course of events in the early morning hours of October 25. John's testimony did not implicate Dale in the decision to take the car, and provides no

**5.** ORS 164.135 provided:

"(1) A person commits the crime of unauthorized use of a vehicle when:

"(a) He takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner * * *."

**6.** Ill.Rev.Stat. ch. 38, § 16–1(a)(1), provided:

"A person commits theft when he knowingly:

"(a) obtains or exerts unauthorized control over property of the owner; * * * and

"(1) intends to deprive the owner permanently of the use or benefit of the property; * * *."

inference that Dale exercised any authority, direction or command over the car.

From our de novo review of the evidence, we conclude that the State did not prove that Dale exercised any authority, direction, or command over Roger's car. Although more than one person may jointly exercise control over a car at the same time, Dale's mere presence in this moving car, without evidence that he exercised authority, direction or command over the car, is insufficient, as a matter of law, to support the juvenile court's determination. We conclude that the juvenile court erred, as a matter of law, in determining that Dale committed the delinquent act of unauthorized use of a motor vehicle.

Accordingly, we reverse the juvenile court order.

ERICKSTAD, C.J., and MESCHKE, JOHNSON and VANDE WALLE, JJ., concur.