[740 NYS2d 2]

In the Matter of RAQUEL M., a Person Alleged to be a Juvenile Delinquent, Appellant.

First Department, March 5, 2002

**APPEARANCES OF COUNSEL**

*Gary Solomon* of counsel (*Monica Drinane, The Legal Aid Society, Juvenile Rights Division,* attorney), for appellant.

*Helen P. Brown* of counsel (*Kristin M. Helmer* on the brief; *Michael D. Hess, Corporation Counsel* of the City of New York, attorney), for Presentment Agency.

**OPINION OF THE COURT**

FRIEDMAN, J.

On July 28, 1999, Abdul Salahuddin, a traffic enforcement agent for the New York City Police Department, parked his 1995 Ford Aerostar van at 789 Coney Island Avenue in Brooklyn. Three days later, police officers, while waiting at a red light at Avenue A and East 4th Street in Manhattan, noticed the van in front of them. Their attention was attracted to the van because of a defective left taillight. As a result, they ran a DMV check and found that the plates were suspended. Further investigation revealed that the plates on the van did not belong to it and that the van had in fact been stolen. Inside the van, the police found appellant sitting in the middle rear seat and she was arrested.

A petition, dated September 15, 1999, was filed against appellant, which indicated that she lived at 795 Coney Island Avenue, close by the location where the van was stolen at 789 Coney Island Avenue. The petition charged appellant, inter alia, with committing acts which if committed by an adult would constitute the crime of unauthorized use of a vehicle in the third degree.

Trial of the proceeding commenced on December 1, 1999 and the presentment agency called two witnesses to testify, namely, Abdul Salahuddin, and Police Officer Michael Hefner, the arresting officer. Salahuddin testified that he did not give appellant permission to use or ride in his van. He also identified a picture of his van which plainly exhibited, in the front windshield, a placard issued to him by the Police Department.

Officer Hefner testified that after he pulled the van over, the driver, unable to produce a valid registration for the van or explain why its plates were not for that van, claimed that the van belonged to a friend of his. The officer also testified that the picture, which reflects the police placard in the windshield, was a fair and accurate representation of the van he had stopped.

Family Court, pointing to the presumption set forth in Penal Law § 165.05 (1), found that appellant committed acts which if committed by an adult would constitute the crime of unauthorized use of a vehicle in the third degree. We agree with Family Court.

Penal Law § 165.05 (1) provides that a person is guilty of the crime of unauthorized use of a vehicle in the third degree when:

> "Knowing that [she] does not have the consent of the owner, [she] * * * rides in or otherwise uses a vehicle. A person who engages in any such conduct without the consent of the owner is presumed to know that [she] does not have such consent."

In *People v McCaleb* (25 NY2d 394, 400-401), the Court of Appeals, concluding that the presumption of knowledge contained in this statute is constitutional, observed:

> "There is a 'fair' 'natural' and 'rational' connection between the fact that a car is being used without permission of its owner, and the presumption that those in the car, driver and *passengers alike*, are aware they do not have permission. The likelihood of innocent use or occupation of a 'stolen' vehicle is minimal, and in the rare instance could be easily explained, presenting no more than a light burden of going forward to make such explanation. Thus, the [accused] may show, by creditable proof, that he innocently accepted an invitation to enter a vehicle which, unknown to him, had been previously taken wrongfully. In that event a heavy burden will have been placed on the prosecution to negative this rebuttal of the presumption, in order to sustain conviction based on proof beyond a reasonable doubt * * *. But the *unexplained* use or presence in a stolen vehicle has a 'sinister significance' sufficient to justify the presumption that the unauthorized use is with knowledge" (citations omitted; emphasis added).

Viewed against this backdrop, it becomes quite obvious that Family Court properly invoked the statutory presumption contained in Penal Law § 165.05 (1). In this case, appellant offered no evidence from any source to explain her presence in the van. Therefore, as her presence in the stolen van was "unexplained," invocation of the presumption was specifically authorized by *McCaleb*, and the presentment agency thereby satisfied its burden of proof.

Appellant, nevertheless, contends that the presumption should not apply here because she established, via the cross-examination of Officer Hefner, that there was no damage to the van (such as a popped ignition) that would lead an occupant to

suspect it had been stolen. Thus, appellant seeks to engraft an indicia of theft requirement as a prerequisite to the presumption's applicability. The dissent agrees with this, concluding that the presumption is negated by Officer Hefner's testimony of the absence of indicia of theft. The difficulty with this conclusion, however, is that it is contrary to the holdings of the Court of Appeals.

In *McCaleb* (*supra*), which was decided more than 30 years ago, the defendant was found in the rear seat of a car that had a working key in the ignition (*id.* at 397), which is the precise factual scenario presented here. The Court of Appeals nevertheless concluded that the statutory presumption of knowledge was applicable. Hence, *McCaleb* makes clear that observable indicia of theft is not a component of the presumption and that the absence of damage or the presence of keys does not constitute an explanation for presence in a stolen vehicle (*see also*, *Matter of Antonio R.*, 186 AD2d 200 [14-year-old passenger properly charged with unauthorized use of a motor vehicle in the third degree where car was driven by 30- to 40-year-old adult with keys in ignition]).

Then, to leave no doubt as to the significance of *McCaleb*, seven years later, in *People v Roby* (39 NY2d 69), the Court of Appeals reviewed its prior decision in *McCaleb* and specifically held that "evidence of theft * * * is *absolutely immaterial* to the quantum of proof necessary to establish commission of the crime of unauthorized use of a vehicle" (*id.* at 71 [emphasis added]). Stare decisis, therefore, precludes this Court from engrafting an indicia of theft requirement onto the statute.[1]

To the extent that the dissent relies upon this Court's decision in *Matter of Stephen R.* (182 AD2d 92) in support of a con-

---

1. The dissent seeks to distinguish *McCaleb* on the ground that there the unexplained presence in the car occurred only nine hours after it was reported stolen while here appellant was arrested three days after the theft, so that there was purportedly nothing "sinister" about her presence in Salahuddin's Aerostar van. In *Roby*, the defendant sought to make the same sort of distinction and the Court of Appeals rejected it out of hand (*supra* at 71). Since the evidence in this case cannot be meaningfully distinguished from the evidence in *McCaleb*, there is no basis for the dissent's assertion that "[t]he evidence here is insufficient to warrant" invoking the statutory presumption.

As to *Roby*, the dissent reads it as requiring the prosecution or presentment agency to show that it would have been "self-evident" to the accused that the vehicle in question was stolen. This reading is contradicted by *Roby*'s express statement that "the crime of unauthorized use is not so interrelated with that of larceny * * * as to require *any* evidence of theft * * *" (39 NY2d at 71 [emphasis added]).

trary conclusion, such reliance is misplaced. The situation presented by our case does not fall within the parameters of *Stephen R.* Rather, our case falls squarely within the parameters of the Court of Appeals decisions in *McCaleb* and *Roby*, and we are obviously bound to follow those decisions rather than *Stephen R.*[2]

This brings us to the dissent's claim that the presentment agency was encumbered with a "heavy burden" to sustain its case against appellant. With this we also cannot agree.

The "heavy burden" requirement, which is derived from *McCaleb* (*supra*), only arises when the accused comes forward with "creditable proof, that [she] innocently accepted an invitation to enter a vehicle which, unknown to h[er], had been previously taken wrongfully" (*supra* at 401). As appellant failed to come forward with such proof, the "heavy burden" identified in *McCaleb* does not come into play.

Nor does application of the presumption in this case implicate, in any way, appellant's constitutional right to remain silent. In *People v Moro* (23 NY2d 496, 501-502), which involved a presumption similar to the one at issue here, the identical argument was raised by the defendant. The Court of Appeals rejected it, because the presumption may be overcome by admissible evidence from any source and without the defendant's testimony. Once again, principles of stare decisis preclude us from reaching a contrary conclusion (*see also, Modern Status: Instruction Allowing Presumption or Inference of Guilt from Possession of Recently Stolen Property as Violation of Defendant's Privilege Against Self-Incrimination,* 88 ALR3d 1178 [cases collected]).

In any event, it is of interest that the record establishes just how appropriately the presumption operated and just how clear it is that appellant actually knew the van was stolen. As noted, the pedigree information furnished by the petition indicated that appellant lived in Brooklyn at 795 Coney Island Avenue, a location right near the one (789 Coney Island Avenue) from which the van was stolen. Appellant was arrested in Manhattan just three days after the theft. When considering possible innocent scenarios, one scenario is that appellant simply accepted a ride from someone she did not know. The difficulty with this scenario is that it strains all bounds of credulity to

---

2. *Matter of Brenda D.* (186 AD2d 65), which the dissent also cites, is inapposite. In that case, this Court did not discuss what evidence would be sufficient to trigger the statutory presumption; it merely found that the evidence present was sufficient to support the adjudication of delinquency.

believe that appellant accepted a ride from someone she did not know, and that this person just happened to be driving a van stolen from right near her home in Brooklyn. Common sense dictates that this is too coincidental to have been happenstance.

If, on the other hand, appellant knew the driver of the van, then she plainly would have had knowledge that the van did not belong to him. The pictures of the van introduced at trial show that it had a New York City Police Department identification placard in the window. As previously indicated, this placard was placed there by the van's owner, who worked for the Traffic Enforcement Division. Appellant, knowing the driver, would have known that he was not an employee of the Police Department. Thus, the record contains ample evidence to unequivocally bolster the conclusion to which the statutory presumption also leads. To the extent the dissent is suggesting that we reverse the adjudication as somehow against the weight of the evidence, it ignores this evidence.

The dissent takes issue with our analysis, asserting that the result we reach, if "followed to its logical conclusion, [would expose] everyone—man, woman or child—[to the] risk [of] conviction for the unauthorized use of a motor vehicle every time he or she accepted a ride with a friend or stranger * * *." We will not discuss the wisdom of accepting or soliciting rides with strangers, nor will we address the logic of our analysis or the risks supposedly arising therefrom. We reiterate, however, that our view precisely follows the Court of Appeals decisions in *People v McCaleb* (*supra*) and *People v Roby* (*supra*). The rule emerging from those decisions is that if an individual is discovered in a stolen vehicle there is need for an explanation. Need for an explanation is not obviated by absence of indicia of theft. Appellant failed to offer any explanation for her presence in the stolen van. The rule, thus, supports Family Court's reliance upon the presumption (Penal Law § 165.05 [1]), and the evidence plainly supported Family Court's findings.

Accordingly, the order of the Family Court, New York County (Sheldon Rand, J.), entered on or about May 3, 2000, which adjudicated appellant a juvenile delinquent, upon a fact-finding determination that appellant had committed an act which, if committed by an adult, would constitute the crime of unauthorized use of a vehicle in the third degree, and placed her on probation for a period of 12 months, should be affirmed, without costs.

ANDRIAS, J.P. (dissenting). I would reverse, vacate the fact-finding and dispositional orders, and dismiss the delinquency petition.

Family Court erroneously applied the permissive presumption in Penal Law § 165.05 (1) (a person who rides in a vehicle without the consent of the owner is presumed to know that he or she does not have such consent) and, absent any direct or circumstantial evidence that appellant, a rear seat passenger, knew she was riding in a stolen vehicle, its finding that appellant was guilty of unauthorized use of a vehicle in the third degree is against the weight of the evidence.

As this Court held in *Matter of Stephen R.* (182 AD2d 92, 95), "That the driver's use of the car was, by all appearances, lawful is sufficient to rebut any presumption that appellant [who was sitting next to the driver in the front passenger seat of a parked car] knew it was being used without authority and casts upon the presentment agency 'a heavy burden * * * to negative this rebuttal of the presumption, in order to sustain conviction based on proof beyond a reasonable doubt' (*People v McCaleb*, [25 NY2d 394] at 401)."

It is well settled that "[e]vidence of an arresting officer's direct observations and investigation, combined with reasonable inferences to be drawn therefrom, suffice to prove guilt of unauthorized use of a vehicle in the third degree beyond a reasonable doubt (*Matter of Jose M.*, 177 AD2d 399, *lv denied* 79 NY2d 756)" (*Matter of Brenda D.*, 186 AD2d 65, 65; *see also*, *Matter of Curtis H.*, 216 AD2d 173, 174). In *Brenda D.*, this Court held that the direct evidence offered by the presentment agency was "*sufficient* to give rise to a presumption that appellant did not have the owner's consent to use the vehicle (Penal Law § 165.05 [1])" (at 65 [emphasis added]). There, however, the direct evidence was that the arresting officer, after confirming that it was stolen, stopped the car in which appellant was a passenger. He and other officers surrounded the car, ordered the four occupants out, and placed them under arrest. "The steering column was ripped apart in an effort to gain access to the wire that started the car, and there was a hole where the right passenger-door lock should have been. The lock was found on the floor near the front passenger seat, and a screwdriver was recovered from the driver's pocket." (*Id.*) Here, to the contrary, the direct evidence offered by the presentment agency was insufficient to give rise to such a presumption.

Here, the arresting officer, who aside from the vehicle's owner was the only witness called by the presentment agency at the fact-finding hearing, testified that, at approximately 12:30 A.M.

on July 31, 1999, the then 14-year-old appellant was a passenger in the middle rear seat of a van traveling in Manhattan, which the officer stopped after a computer check revealed that it bore suspended license plates. The petition names, and there was reference to, the presence of two other adult passengers, but there was no testimony at the hearing to that effect. After the van was stopped, the driver of the van told the officer that it belonged to a friend, but was unable to produce a valid registration for the vehicle or explain why the plates on the van were not the ones registered to the vehicle. It was subsequently determined that the van had been stolen several days earlier.

Significantly, on cross-examination, the officer further testified that the vehicle was being driven by an adult who had the keys; that the steering column was not broken; that there was no way to tell the van was stolen until he ran the license plate check; and that, looking at the inside of the vehicle, there was no way to tell that anything had been tampered with or that the van was stolen.

Although appellant did not present any witnesses and did not testify on her own behalf, the officer's testimony, by itself, is sufficient to rebut the statutory presumption. Once evidence is before the court, whether introduced by the presentment agency or developed by the defense on cross-examination, the defense is free to refer to it or rely upon it to develop its theory of the case. Thus, the majority's observation that "appellant offered no evidence from any source to explain her presence in the van" is both an inaccurate explanation of her obligation in a quasi-criminal case and a misreading of what transpired at the hearing.

Moreover, as noted in *Stephen R.* (*supra* at 96), requiring appellant to testify in order to meet her "light burden of going forward" to explain her presence in the vehicle and thus rebut an unwarranted presumption would infringe upon her right to remain silent by drawing an adverse inference from such failure and would shift the burden to appellant to demonstrate her innocence rather than place the burden on the presentment agency to establish each element of the offense, including knowledge that the vehicle was stolen, beyond a reasonable doubt. The presumption may certainly be overcome without the appellant's testimony and is not sustainable merely because the appellant has elected not to take the stand (*see, People v Moro,* 23 NY2d 496, 501).

The lack of any indicia that the vehicle was stolen is significant in that the same indicia are equally relevant to the ques-

tion of whether the vehicle was being operated without the owner's permission. Without the permissive presumption, there is nothing in the record to support a finding that the 14-year-old appellant or a reasonable person in her circumstances was aware or should have been aware that she was riding in a stolen vehicle or that the driver did not have the owner's authorization to use it.

In *People v Roby* (39 NY2d 69), the defendant was sitting in the front seat of the car while his companions were trying to insert a key into the ignition. The Court of Appeals found that under those circumstances the jury was warranted in concluding that defendant's occupation of the front seat of an "unquestionably stolen" vehicle constituted the unauthorized use of the vehicle under the statute (39 NY2d at 71). Here, on the other hand, it was not self-evident that the van in which appellant was riding was stolen. Only after it was stopped and further investigation conducted, presumably of police or motor vehicle records, was it determined that the van had been stolen three days earlier.

Likewise, in *McCaleb (supra)*, the Court found that there was "a rational connection between the presumed fact and the given evidence, and a reasonably high degree of probability [was] present sufficient to justify placing the relatively light burden of going forward on the defense". (*Id.* at 404). The evidence here is insufficient to warrant the fact-finding court's sole reliance upon the statutory presumption.

There is also nothing in the record to indicate that the fact-finding court relied on anything other than the permissive presumption. Nor is there any indication that the placard on the dashboard of the van entered into the court's thinking in any way. Moreover, the majority's reliance upon the coincidence that appellant lived near the owner of the van for its conclusion that appellant clearly knew that the van she was riding in had been stolen three days earlier amounts to nothing but impermissible and illogical speculation. It could just as easily be speculated that, since the driver and other passengers were known to appellant from her neighborhood, she trusted them not to be driving in a stolen van.

Finally, it appears from the hearing transcript that the court did not accept the proffer by appellant's counsel of our decision in *Matter of Stephen R. (supra)*, but relied upon the decision in *Matter of Antonio R.* (186 AD2d 200), which is distinguishable on its facts (as the result of a police bulletin, the juvenile there was found sitting in the front passenger seat of a car that had

been stolen 40 minutes earlier). Here, the significance of the 14-year-old appellant's riding with three adults in the rear passenger seat of a van reported stolen three days earlier is a far cry from the "sinister significance" of the adult defendants' unexplained presence in two parked cars that had been reported stolen within nine hours of the arrests in *People v McCaleb* (*supra* at 400).

If the majority's reasoning were followed to its logical conclusion, everyone—man, woman or child—would risk conviction for the unauthorized use of a motor vehicle every time he or she accepted a ride with a friend or stranger in an unfamiliar vehicle, unless he or she first demanded and obtained proof that the driver had the owner's permission to use it. There is no reason to believe that, if appellant had asked the driver where he had gotten the van, his answer would have been any different than his answer when that question was asked by the arresting officer: viz., that it belonged to a friend.

SAXE and WALLACH, JJ., concur with FRIEDMAN, J.; ANDRIAS, J.P., and LERNER, J., dissent in a separate opinion by ANDRIAS, J.P.

Order, Family Court, New York County, entered on or about May 3, 2000, affirmed, without costs.